Joseph P. BRUENIG and Mary S. Bruenig, his wife, Appellants,

v.

Gail L. SILVERMAN, Appellee.

Court of Appeals of Kentucky.

Feb. 24, 1978.

Robert G. Stallings, Louisville, for appellants.

Anthony H. Ambrose, Louisville, for appellee.

Before HAYES, REYNOLDS and VANCE, JJ.

HAYES, Judge.

This is an appeal of an order of the Jefferson Circuit Court in which the circuit court ruled that it lacked jurisdiction to make a custody determination.

Appellant, Joseph P. Bruenig, a resident of Louisville, Kentucky, brought this action on March 10, 1976, against his former wife, appellee, Gail L. Silverman, a resident of El Cajon, California, in order to obtain the custody of his two daughters, Cheryl M. Bruenig, age 10 and Danette Bruenig, age 9.

Appellant, Joseph P. Bruenig, and appellee, Gail L. Silverman, formerly Gail L. Bruenig, were married on March 25, 1966, in Los Angeles, California. In September, 1969, Gail L. Bruenig initiated uncontested divorce proceedings against her husband, Joseph P. Bruenig, in the Superior Court of San Diego County, California.

A judgment was entered on March 19, 1970, by the San Diego County Superior Court dissolving this marriage and awarding custody of Cheryl M. Bruenig and Danette Bruenig to their mother, Gail L. Silverman.

Gail L. Silverman was married a second time on April 3, 1970. This marriage lasted approximately three (3) months. Later in 1970, Joseph P. Bruenig married his second wife, Mary Sue Bruenig, and moved to Kentucky in June of 1971.

Appellee wrote the appellant, Joseph P. Bruenig, a letter on May 13, 1974, in which she proposed that both Cheryl and Danette should come to Louisville and live with their father for the summer of 1974. Appellee wrote in part:

> . . . It's been a long time since they've had a father and it really shows. They want to set Danette back a year cause she is so imature [sic] . . . and Cheryl just plain needs a man, period. I've really had trouble with her minding and the school says she's really a handfull, always wanting attention any way she can get it . . .
>
> They both need attention from a man and the only one that can give them the correct attention is their father, oh, other men probably could but the love is not there and they know it, or should I say they can sence [sic] it. . . .

The children came to Louisville, Kentucky, in June of 1974. At the end of the summer, Joseph P. Bruenig refused to send the children back to California.

Appellee upon direct examination testified thus:

Q. 78 O.K. When did you next hear from Joseph Bruenig?

A. About a week before school was to start he called and said that he had asked the girls if they wanted to stay and they said yes or that the girls had said they wanted to stay and that if I wanted to I could contact an attorney but it wasn't going to do me much good because they were going to stay and he said that he would call back in a week, that he would advise me to contact attorneys and see what could be done and that he would call in a week and get my answer.

Appellee then stated that she had contacted two private attorneys in El Cajon, California, who told her that there was not much that could be done since they did not know the laws of Kentucky and since appellee had little money with which she could pay her attorney fees. She also testified that the El Cajon District Attorney advised her that she had no case and that there was not much that she could do about it.

Appellee further testified on direct examination as follows:

Q. 87 O.K. Did you have an occasion to call Joseph back shortly after he had phoned you?

A. Well, he phoned back and asked if I had contacted an attorney and I said yes and he asked what was said and I told him what had happened, that there wasn't too much I could do and he said, well, that he had already enrolled the girls in school and there wasn't too much I could say about it because I couldn't come back and get them so I agreed for them to stay the school year but I would like them returned that next summer. On cross-examination appellee responded thus:

Q. 278 You didn't discuss the amount of necessities over and above what you could provide and what Mr. Bruenig would provide?

A. Yes. He told me that when he called and said he was keeping the children, he said that he felt he could provide a better home, that I was single and was going to want to be dating and that this would give me time to find a husband and get settled and he kept stressing that he could provide a better home.

Q. 279 What did you say?

A. Well, there wasn't much I could say at that time, yes, he could.

Appellee then testified that the only action she took to get back her children in 1975, was to write a letter to an Assistant Jefferson County Attorney, who told her that whatever she decided to do, to do it peacefully.

Appellee married her third husband, Mark Silverman, on October 4, 1975. Appellee then engaged an attorney who filed a petition on January 26, 1976, in the San Diego Superior Court to have appellee's custody of her two daughters restored. A judgment of the Superior Court was entered on March 18, 1976, which ordered the appellant to surrender Cheryl and Danette Bruenig to the mother in California.

Appellant introduced the testimony of several witnesses, including the children's teachers and next door neighbor, which established that the children were well taken care of and were happy in their new home in Kentucky.

The issue before this court was stated in the Circuit Court's Findings of Fact and Conclusions of Law thusly:

Whether or not under KRS 403.-260(1)(b)(1. & 2.) the Court has jurisdiction of this subject matter of the two children who have been residing with the father, petitioner herein, under arrangement, since June, 1974; their custody being with the mother under a California decree.

The Circuit Court then held:

1. Kentucky is not the home state of the children and does not have jurisdiction of the issue of their custody. The issue of custody of the children herein is and re-

mains with the state of California, under the Decree entered in the Superior Court of San Diego County, California.

This Court cannot agree with the trial court's interpretation of KRS 403.-260(1)(b)(1 & 2) which provides:

(1) A court of this state competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if: .· . .

(b) It is in the best interest of the child that a court of this state assume jurisdiction because:

1. The child and his parents, or the child and at least one (1) contestant, have a significant connection with this state; and

2. There is available in this state substantial evidence concerning the child's present future care, protection, training, and personal relationships; or . . .

This court believes that there was enough substantial evidence presented to the trial court to support a finding that all the requirements of KRS 403.260(1)(b)(1 & 2) have been met.

The evidence clearly established that the father had a "significant contact" with Kentucky in that he had been a lifelong resident, except for the three years he spent in California.

The children, unquestionably have a "significant contact" with Kentucky, in that they had resided in Kentucky for approximately eighteen (18) months before the appellee even brought any legal action to regain custody of her daughters.

The evidence before the trial court established that the children had attended school here in Kentucky on a regular basis for well over a year, and that they were well established in a stable and happy environment. This court cannot find a more "significant contact" than these facts.

Appellee's own testimony at best tends to establish that she made a few feeble attempts at regaining custody. Her testimony further supports the conclusion that she even acquiesced, although reluctantly, in the appellant's custody of her two children.

The trial court cited a number of cases as the basis for its decision. Among them were *Hawley v. Shaver*, Ky., 528 S.W.2d 669 (1975), *Turley v. Griffin*, Ky., 508 S.W.2d 764 (1974) and *Honigsberg v. Goad*, Ky., 550 S.W.2d 471 (1976).

This court believes the facts in the above cited cases to be distinguishable from the facts in the present case because in those cases the children were in Kentucky for only a very short time, a matter of a few months, before legal action was brought promptly to regain their custody. In this case, the appellee waited a long period of time before bringing any legal action. In the meantime, "significant contact" between her children and Kentucky had developed.

This court finds that "there must be a point in time when the circumstances of a situation dictate that jurisdiction of an interstate child pass to the place where the child presently resides", *Hook v. Hook*, Ky. App., 551 S.W.2d 818 (1977). We feel that this point has been .reached in this case.

In *Hook v. Hook, supra*, an interstate child which had been domiciled with his mother in Texas was brought into Kentucky to live with the child's natural father, to provide a change in environment for the child. Subsequently, the father made arrangements for medical care and enrolled the child in a school for retarded children. About five months later, the father brought an action to have legal custody of his son.

The trial court's finding that it had jurisdiction under KRS 403.260 was affirmed by this court.

In this case, the evidence clearly established that the children were allowed to come into this state to live with their natural father in order to better their own emotional and material welfare at a time when their mother was having financial and other personal problems.

Therefore, this court cannot extend full faith and credit to the judgment of the San Diego Superior Court entered on March 18,

1976, since jurisdiction over these children has shifted to Kentucky. Thus, we find the judgment of the trial court to be clearly erroneous.

The judgment is reversed and the case is remanded for proceedings consistent with this opinion.

All concur.