No. 81-445

IN THE SUPREME COURT OF THE STATE OF MONTANA

1981

---

ELIZABETH SCOTT PIERCE,

Petitioner and Respondent,

vs.

BRUCE CARROLL PIERCE,      Respondent and Appellant.

---

Appeal from:   District Court of the Fourth Judicial District,
               In and for the County of Missoula
               Honorable John Henson, Judge presiding.

Counsel of Record:

    For Appellant:

        Datsopoulos, MacDonald and Lind, Missoula, Montana

    For Respondent:

        Milodragovich, Dale & Dye, Missoula, Montana

---

Submitted on briefs: January 12, 1982

Decided: FEB 11 1982

Filed: FEB 11 1982

Thomas J. Kearney Clerk

Mr. Justice Frank B. Morrison, Jr., delivered the Opinion of the Court.

On September 7, 1979, the Circuit Court of Franklin County, Kentucky, decreed that the marriage of Bruce Carroll Pierce and Elizabeth Scott Pierce be dissolved and that Elizabeth Pierce be given custody of the parties' six year old son, Jeremy. This appeal results from a decision by the Missoula County District Court that under federal and state law it lacked jurisdiction to modify that child custody determination.

Bruce and Elizabeth Pierce were married on March 21, 1972, in Franklin County, Kentucky. On July 23, 1979, they entered into a separation and property settlement agreement whereby Elizabeth was given custody of Jeremy, and Bruce was given liberal visitation rights. That agreement was subsequently approved and adopted by the Franklin Circuit Court in its September 7, 1979, dissolution decree.

In August, 1979, with Elizabeth's consent, Bruce brought Jeremy to Montana. As of the date of this appeal the parties disagreed as to the nature and duration of Jeremy's visit to Montana. In the pleadings Bruce alleged that Elizabeth agreed to let Jeremy visit for an indefinite period, and Elizabeth alleged that before Jeremy left, they had agreed to a specific date on which Jeremy was to be returned but that Bruce failed to abide by their agreement.

One year later, on August 11, 1980, Bruce filed a petition for modification of child custody in the Missoula County District Court. Bruce alleged that jurisdiction was established under subsections (1)(a), (1)(b) and (1)(d) of section 40-4-211, MCA. In an affidavit filed in support of

his petition, Bruce stated that he had resided in Missoula, Montana, since August, 1979; that Jeremy had been living with him for the past year with Elizabeth's consent; and that Jeremy was attending school in Missoula County.

In an initial response and counterpetition Elizabeth alleged that the court must decline to exercise jurisdiction over the modification petition because Bruce had improperly retained Jeremy in Montana after she requested that he be returned to her custody. In an amended response and counter-petition Elizabeth further alleged that Kentucky had continuing jurisdiction over the child custody determination, as was evidenced by an October 8, 1980, order from the Franklin Circuit Court finding Bruce in contempt of court for failing to return Jeremy to Elizabeth's custody, and that, because Kentucky desired to exercise its continuing jurisdiction, the Montana court could not exercise jurisdiction in accordance with 28 USC §1738A, the "Full Faith and Credit Given to Child Custody Determinations" provision of the Parental Kidnapping Prevention Act of 1980.[1]

At Elizabeth's request an order was issued on March 10, 1981, directing the Montana District Court to communicate directly with the judge of the Franklin Circuit Court of Kentucky in order to ascertain whether the Franklin Circuit Court desired to continue assertion of jurisdiction over the custody determination. On April 8, 1981, the District Court received a telephonic message from Judge Squire N. Williams of the Circuit Court of Frankfort, Kentucky, informing the court that Judge Williams agreed that since the child resided in Montana the custody matter should be determined in Montana. On April 13, 1981, Franklin Circuit Court Domestic Relations Commissioner, Robert A. Bowman, left a

-3-

message that contradicted Judge Williams' earlier message. Judge Henson of the Montana District Court then asked Mr. Bowman to reduce his opinion to writing, and in a letter addressed to Judge Henson dated April 27, 1981, Mr. Bowman stated that it appeared that proper jurisdiction over the custody determination lies in Kentucky under the Uniform Child Custody Jurisdiction Act.

On July 27, 1981, Judge Henson heard arguments from counsel on the jurisdiction issue. During the hearing neither party presented any testimony through sworn witnesses. Elizabeth's counsel did, however, submit several exhibits as evidence that Kentucky had continuing jurisdiction. Exhibit 3 was a certified copy of the contempt order issued by the Franklin Circuit Court on October 8, 1980; Exhibit 4 was the April 27, 1981, letter from Mr. Bowman to Judge Henson. At the close of argument Judge Henson ruled, as a matter of law, that the Montana District Court had no jurisdiction over the cause. He also indicated that his ruling was not intended to be a reflection on the parties.

On July 31, 1981, Judge Henson issued findings of fact, conclusions of law and judgment. Specifically, the court found that:

> ". . .

> "3. In response to inquiry by the Court, counsel for Respondent admitted that in December, 1979, Respondent refused Petitioner's request to return the child to her in Kentucky. Respondent also refused subsequent requests from Petitioner for the return of the child.

> ". . .

> "10. The Franklin Circuit Court desires to, and is in fact, asserting continuing jurisdiction over the parties, the minor child, and this cause."

The court concluded, inter alia, that:

-4-

"...

"2. Kentucky statutory and case law provides the Franklin Circuit Court with continuing jurisdiction over the parties, the child and this cause.

"3. The Franklin Circuit Court is asserting its continuing jurisdiction over the parties, the child and this cause.

"4. Section 28 U.S.C. 1738A, the Parental Kidnapping Prevention Act of 1980, denies this Court jurisdiction to modify the September 7, 1979, Franklin Circuit Court Decree.

"...

"6. It would be proper for this Court to decline to exercise jurisdiction over this cause under the terms of the Montana Uniform Child Custody Jurisdiction Act."

In an August 27, 1981, order denying Bruce Pierce's motion for a new trial, the District Court reiterated that 28 USC §1738A, and sections 40-7-109 and 40-7-114, MCA, were the bases upon which he concluded that no jurisdiction existed and that jurisdiction must be declined.

The appellant, Bruce Pierce, raises the following issues on appeal:

(1) Whether the District Court erred in dismissing appellant's petition for modification on the ground that Kentucky had, and desired to assert, continuing jurisdiction under 28 USC §1738A?

(2) Whether the District Court erred in declining to exercise jurisdiction over appellant's petition for modification of the Kentucky custody determination on the ground that appellant had violated the terms of the Kentucky decree?

Full Faith and Credit Limitations on Montana Jurisdiction

Prior to enactment of 28 USC §1738A, in Montana, Kentucky and forty-two other states, the Uniform Child Custody Jurisdiction Act (UCCJA) protected one state's custody determination from modification by courts of another state. See,

-5-

e.g., sections 40-7-101, et. seq., MCA; Ky. Rev. Stat. §§403.400, et. seq.  In Wenz v. Schwarz (1979), ____ Mont. ____, 548 P.2d 1086, 36 St.Rep. 1360, this Court outlined the two-part process required to determine whether Montana has jurisdiction to modify another state's decree under the UCCJA.  That process required first, a determination that Montana had jurisdiction under section 40-7-104, MCA, which by reference incorporated the jurisdictional prerequisites of section 40-4-211, MCA, and second, a determination that the decree state no longer had jurisdiction or had declined to exercise its jurisdiction.

Section 8 of the Parental Kidnapping Prevention Act of 1980 elevated the UCCJA jurisdictional standards to a federal level.  Custody determinations made in accordance with those standards must now be given full faith and credit.  The same two-step decision-making process used under the UCCJA must be followed in applying 28 USC §1738A(f).

The lower court correctly determined, under step 2 of the Wenz analysis, that if Kentucky had continuing jurisdiction, such a finding would foreclose any need for the trier of fact to ascertain whether Montana satisfied one of the four alternate jurisdictional bases under section 40-4-211, MCA.  This Court finds no harm in the District Court's inverted approach to the jurisdictional issue; however, error does lie in the fact that the District Court's findings of fact and conclusions of law are not supported by evidence. Without benefit of either the affidavits required under section 40-7-110, MCA, or an evidentiary hearing, the District Court made conclusory findings that Kentucky's jurisdiction did in fact continue and that Montana must decline to exercise jurisdiction because appellant improperly retained the child

after a visit. At a minimum, 28 USC §1738A(f) requires the trier of fact to weigh the facts vis a vis the jurisdictional prerequisites established under the law of the decree state. The law is very clear: Kentucky's jurisdiction continues only if the child or one contestant still resides in Kentucky and one of the jurisdictional bases of Ky. Rev. Stat. §403.420(1) is currently satisfied. 28 USC §1738A(d). Ky. Rev. Stat. §403.420(1), identical for the most part to section 40-4-211, MCA, provides:

"403.420. Prerequisites to jurisdiction -- Commencement of proceeding. -- (1) A court of this state which is competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(a) This state is the home state of the child at the time of commencement of the pro- ceeding, or had been the child's home state within six (6) months before commencement of the proceeding and the child is absent from this state because of his removal or reten- tion by a person claiming his custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

"(b) It is in the best interest of the child that a court of this state assume jurisdiction because the child and his parents, or the child and at least one (1) contestant, have a signi- ficant connection with this state, and there is available in this state substantial evi- dence concerning the child's present or future care, protection, training, and personal rela- tionships; or

"(c) The child is physically present in this state and the child has been abandoned or it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse or is otherwise neglected or dependent; or

"(d) It appears that no other state would have jurisdiction under prerequisites sub- stantially in accordance with paragraphs (a), (b), or (c), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to deter- mine the custody of the child, and it is in the best interest of the child that this court assume jurisdiction."

Excepting the exhibits presented by respondent's counsel during argument on the law, the only evidence before the lower court as to any factual basis for jurisdiction was the affidavit from Bruce Pierce which accompanied his modification and temporary custody petition. This evidence does not conform to any of the jurisdictional standards set forth in Ky. Rev. Stat. §403.420(1). As for the exhibits submitted by respondent, this Court finds that neither the October, 1980, contempt order nor the letter from Mr. Bowman support a finding of continuing jurisdiction. The District Court cannot infer from either of these exhibits that the facts needed to establish jurisdiction pursuant to Ky. Rev. Stat. §403.420(1) are extant. The District Court must make a specific finding, based on evidence in the record and not mere allegations, as to the particular basis upon which the decree state could lawfully continue to exercise jurisdiction.

The District Court's error was further compounded by the fact that the court prematurely resorted to informal communication with the Franklin Circuit Court of Kentucky to facilitate the jurisdictional decision-making process. Section 7 of the UCCJA, after which section 40-7-108(4) was modelled, does direct courts of one state to communicate with courts in another state when an interstate custody matter arises. However, such communication was intended to facilitate the decisional process in situations where it has been determined that two states have concurrent jurisdiction, and a decision must be made regarding which state is the most appropriate forum to act in light of the child's best interests. The comment following UCCJA §7 states:

> "The purpose of this provision is to encourage judicial restraint in exercising jurisdiction whenever another state appears to be in a bet- ter position to determine custody of a child.

-8-

> It serves as a second check on jurisdiction
> once the test of sections 3 or 14 has been met."
> (Emphasis supplied.) Commissioner's Note, 9
> U.L.A. 139 (master ed. 1979).

In that requirements of (c)(2) and (f) of the federal statute are substantively equivalent to the tests required by UCCJA sections 3 and 14, the District Court's attempt to informally resolve possible interstate jurisdictional conflict was untimely. The issue of whether it is appropriate to exercise jurisdiction is secondary to, and distinct from, the issue of whether jurisdiction lies.

In reapplying 28 USC §1738A, which by reference incorporates both Kentucky and Montana law, the trial court is directed to hold a full evidentiary hearing to settle the jurisdiction matter. The Wenz decisional mode should be followed, and specific findings of fact as to jurisdictional basis should be made. If the District Court choses to address the Wenz steps in reverse order, it must address the question of Kentucky's continuing jurisdiction systematically in light of Ky. Rev. Stat. §403.420(1). If the lower court finds that Kentucky is Jeremy's home state, it must conclude that Kentucky has continuing jurisdiction and that Montana cannot modify the Kentucky decree consistent with the provisions of 28 USC §1738A(f). If the lower court finds that, as the present record indicates, Jeremy's home state is not Kentucky but Montana,[2] then the jurisdictional prerequisites of subsections (a) and (d) of the Kentucky statute must be automatically eliminated as possible bases for continuing jurisdiction. Since there are no allegations to support consideration of the "abandonment/emergency" alternative of subsection (c), it would then follow that the only logical basis upon which the District Court could find continuing jurisdiction is subsection (b), the "significant connection"

standard. Only if the District Court finds Kentucky has jurisdiction, should it dispense with analysis of possible jurisdiction in Montana and conclude that Montana has no jurisdiction to modify the Kentucky decree.

If the District Court finds that Kentucky no longer has jurisdiction under one of the enumerated bases, it must determine whether Montana has jurisdiction under section 40-4-211, MCA, which is incorporated by reference in section 40-7-104, MCA. If the lower court finds that Montana satisfies any of these jurisdictional standards, it must find that, under 28 USC §1738A(f) and sections 40-4-211 and 40-7-114, MCA, Montana has jurisdiction to modify the Kentucky decree. Only after such a finding is made should the District Court focus on policy considerations as to whether Montana should exercise its jurisdiction. It is then and only then that the "forum non conveniens" and "clean hands" provisions under state law come into play.

Discretion to Decline to Exercise Jurisdiction

As outlined above, the question of whether it is appropriate for a state court to exercise its jurisdiction need only be reached if a determination is made that Montana in fact has jurisdiction. The finding of fact upon which the trial judge relied in reaching his conclusion to decline jurisdiction, that appellant wrongfully retained the child, is unsupported by what little evidence there is in the record. Once again referring to appellant's affidavit, appellant swore that Jeremy had been in Montana since August, 1979, with respondent's consent. Although appellant's counsel did concede during argument that respondent made no request for the child's return for five months after the child left Kentucky, at no time during argument did counsel make an admission that

-10-

expressly contradicted his client's prior sworn statement; moreover, respondent did not submit any sworn testimony that refuted appellant's testimony. Counsel for appellant, at the beginning of argument, made it quite evident that the facts surrounding any alleged request were as yet disputed. The exchange between the court and counsel at p. 25 of the transcript does not constitute an admission as to improper retention.

Additionally, the trial judge should not have relied upon the Kentucky contempt order to determine the propriety of appellant's conduct. The validity of that order may be suspect under 28 USC §1738A(g) and KRS §403.540. Both sections provide that a state shall not exercise jurisdiction if a proceeding concerning the custody of the child was pending in the court of another state that is exercising jurisdiction consistent with federal/UCCJA jurisdictional standards. If the trial judge finds that Montana had jurisdiction to modify the decree on or before October 1, 1980, it follows that the Franklin Circuit Court was acting in contravention of federal and Kentucky law when it issued the contempt order that effectively countermanded the temporary custody order issued by the Montana District Court on September 4th.

The comment following UCCJA section 8, after which section 40-4-109, MCA, was modelled, states that "[t]he qualifying word 'improperly' is added to exclude cases in which a child is withheld because of illness or other emergency or in which there are other special justifying circumstances." (Emphasis supplied.) Commissioner's Note, 9 U.L.A. 143 (master ed. 1979).

In determining whether the appellant "improperly retained

[Jeremy] after a visit," the trial judge should examine all the circumstances surrounding the retention and not deem appellant's action improper per se merely because respondent may have requested immediate return of the child. While the custodial parent's request should not be disregarded, neither should the Court overlook the possibility that immediate return upon request might unreasonably disrupt the child's home and school life.

Finally, before the trial judge may conclude jurisdiction must be declined, the trial court must balance the child's best interests against the State's interest in avoiding forum-shopping and parental kidnapping. Jurisdiction shall not be declined unless the trial court determines that the child's best interests will not be injured by such a decision.

The lower court's judgment is reversed, the order vacated and the cause is remanded for evidentiary hearing consistent with this opinion.

_____

[1] Provisions of 28 USC §1738A pertinent to this appeal provide:

"§1738A.  Full faith and credit given to child custody determinations.

"(a)  The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

"(b)  As used in this section the term --

". . .

"(2)  'Contestant' means a person, including a parent who claims a right to custody or visitation of a child;

"(3)  'custody determination' means a judgment, decree, or other order of a court providing for the custody or visitation of a

child, and includes permanent and temporary orders, and initial orders and modifications;

"(4)    'home State' means the State in which, immediately preceding the time involved, the child lived with his parents, a parent or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons.  Periods of temporary absence of any of such persons are counted as part of the six-month or other period;

"(5)    'modification' and 'modify' refer to a custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not;

" . . .

"(8)    'State' means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or a territory or possession of the United States.

"(c)    A child custody determination made by a court of a State is consistent with the provisions of this section only if --

"(1)    such court has jurisdiction under the law of such State; and

"(2)    one of the following conditions is met:

"(A)    such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;

"(B)(i)    it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;

" . . .

"(D)(i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or

"(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.

"(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

". . .

"(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if --

"(1) it has jurisdiction to make such a child custody determination; and

"(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

"(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination."

---

[2] As the record stands, as of August 11, 1980, under federal and state law, Montana was Jeremy's home state.

This Court is not persuaded by respondent's contention that during the time a child is present in a state as a result of acts in violation of an existing custody decree, calculation of the six month period needed to establish "home state" jurisdiction should be tolled. Cf. Freeman v. Freeman (Ky. 1977), 547 S.W.2d 437. Neither the language nor the legislative history of the "home state" definitional subsection support such a conclusion. See Commissioner's Note, 9 U.L.A. 123 (master ed. 1979). Facts relating to the improper conduct of a petitioner should only be addressed in the

context of determining whether it is appropriate to exercise jurisdiction once it has been determined that Montana has jurisdiction.

Additionally, Wenz, supra, Marriage of Settle (1976), 276 Or. 759, 556 P.2d 962, 965, overruled in part, 291 Or. 363, 630 P.2d 353; Matter of Custody of Ross (1981), 291 Or. 363, 630 P.2d 353, 358; Bruenig v. Silverman (Ky. 1978), 563 S.W.2d 482; and Hook v. Hook (Ky.App., 1977), 551 S.W.2d 818, at a minimum, would support a finding that Montana has jurisdiction under either the "home state" or "significant connection" standard of section 3.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

-15-