No. 84-223

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

IN RE THE MARRIAGE OF
DALE ELLYS LANCE,

        Petitioner & Respondent,

  and

JOHN FESLER LANCE,

        Respondent and Appellant.

------------------------

IN RE THE CUSTODY OF
BRADLEY JOHN LANCE AND CHRISTINA
DALE LANCE.

---

APPEAL FROM:  District Court of the Fourth Judicial District,
            In and for the County of Missoula,
            The Honorable Michael Keedy, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

        John F. Lance, pro se, Florence, Montana

      For Respondent:

        Harris & Harris; Mark W. Harris, Evanston, Wyoming
        Ferguson & Mitchell; Carol A. Mitchell, Missoula,
        Montana

---

Submitted on Briefs:  August 30, 1984

Decided:  October 31, 1984

Filed: **OCT 31 1984**

*Ethel M. Harrison*

---
Clerk

The Fourth Judicial District Court, County of Missoula, dismissed a custody modification petition and motion for placement of children in a foster home for lack of subject matter jurisdiction. The petitioner below, John Fesler Lance, appeals. We affirm the decision of the District Court.

The marriage of Dale Ellys Lance (now Willavize) and John Fesler Lance, the father and appellant, was dissolved by decree in the Fourth Judicial District on March 29, 1979. Custody of the minor children of the marriage, Bradley and Christina, was awarded to Dale Lance, the mother and respondent. In late June or early July of 1982, the mother, her new husband, and the two children moved to Wyoming, where the husband had secured a position as a high school principal. Since that time, the mother, her husband and the two children have continued to reside in Wyoming, where Brad and Christina attend school.

On March 3, 1983, the father, a pro se litigant, filed a petition for modification of the custody provision of the 1979 decree of dissolution. On June 30, 1983, the father filed a second document, captioned "Motion for Placement of Children in Foster Home," in which the father requested that Brad and Christina be removed from Wyoming and placed in a foster home near his residence in Florence, Montana. The motion asked that the children be kept in a foster home until the March, 1983 petition for modification had been ruled upon. Because the motion was brought under section 40-4-219, MCA, Montana's custody modification statute, we will hereafter refer to it as a petition for custody

modification. The petition to modify custody by placing the children in a foster home was heard on September 22, 1983. On that date, the mother moved the court to dismiss both custody modification petitions for lack of subject matter jurisdiction. The jurisdictional issue was argued by the parties at the hearing, and the court also set a briefing schedule on that issue. Briefs were submitted by both parties, and on February 14, 1984, the District Court issued its memorandum order dismissing both petitions for lack of jurisdiction. The father filed a "Motion for Reconsideration" of the District Court's order on February 27, 1984, along with a supporting brief which was filed on March 5, 1984. The motion for reconsideration was denied by the court on March 16, 1984, and the father appeals.

Succinctly stated, the father's first issue on appeal is whether the District Court erred in entertaining the mother's motion to dismiss, which was made on the same day as the hearing on the father's petitions for custody modification.

The father argues that the mother's motion to dismiss for lack of subject matter jurisdiction was improperly made, and therefore should not have been considered by the court. According to the father, the motion was defective in that it was captioned as a "Response to Motion for Placement of Children in Foster Home," and contained no "formal" motion to the court.

The mother's "Response" was filed in District Court on September 22, 1983, and stated in paragraph I, "[s]aid motion must be dismissed because this Court lacks personal jurisdiction and jurisdiction of the subject matter of

-3-

custody and visitation, much less foster care placement, pursuant to sections 42-4-211 and 42-2-108, M.C.A." Paragraph IV concludes, "[w]herefore, Petitioner requests the Court dismiss Respondent's petition for modification and Motion for Placement in Foster Home. . . . " The mother also raised her jurisdictional challenge orally at the September 22, 1983 hearing on the father's custody modification petitions.

Rule 12(h)(3), M.R.Civ.P., provides that "[w]henever it appears <u>by suggestion of the parties or otherwise</u> that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." (Emphasis provided.) We find that the mother's allegations of lack of subject matter jurisdiction were entirely adequate under Rule 12(h)(3) to bring the issue before the District Court.

The father also maintains that the mother's "Response" was defective because it contained two miscited statutes. This argument lacks merit because correct statutory citations were given in the mother's supporting brief which was filed with her "Response." It is also clear that the mother filed a document entitled "Notice of Corrections of 'Response to Motion for Placement of Children in Foster Home,'" on October 7, 1983, a copy of which was mailed to the father. The "Notice of Corrections" absolved the clerical errors in the original document.

The father further contends that under section 40-4-216(1), MCA, which states that "[c]ustody proceedings shall receive priority in being set for hearing," the trial court should have ruled on the custody matter before deciding the issue of whether it had subject matter

-4-

jurisdiction. Similarly, the father argues that because the court assumed jurisdiction in presiding over the September 22, 1983 hearing on the custody modification petitions, it was precluded from dismissing the case for lack of subject matter jurisdiction. Regarding both of these arguments, we simply note that it is a fundamental axiom of our legal system that the issue of subject matter jurisdiction may be invoked at any time in the course of a proceeding. Larrivee v. Morigeau (1979), 184 Mont. 187, 192, 602 P.2d 563, 566, cert. den. 445 U.S. 964, 100 S.Ct. 1653, 64 L.Ed.2d 240; Corban v. Corban (1972), 161 Mont. 93, 96, 504 P.2d 985, 987. Furthermore, once the issue is raised and a court determines that there is a lack of subject matter jurisdiction, it can take no further action in the case other than to dismiss it. Rule 12 (h)(3), M.R.Civ.P.

Because the mother challenged the District Court's jurisdiction on September 22, 1983, the same day as the hearing on the father's petitition for custody modification, the father maintains that he had neither notice nor an opportunity to be heard on the jurisdictional issue, as required by section 40-7-105, MCA. Yet the record reveals that not to be the case, for the father was provided with an opportunity to respond to the jurisdictional challenge at the hearing, and did respond at length. Furthermore, the court refused to rule on the issue of jurisdiction until both parties were given a mutually satisfactory amount of time in which to brief the court. Indeed, the court was obviously concerned with the father's pro se status and repeatedly addressed the father's time constraints in setting a briefing schedule, as the following exchange from

-5-

the transcript reveals:

> "THE COURT: Well, Mr. Lance, yes, it's apparent to the Court that you have done a tremendous amount of work here and I will do everything I can to accommodate your needs and your schedule. Do you feel that I have given you enough time to file your responsive brief on the jurisdictional issue?
>
> "MR. LANCE: Yes, there is no problem with that at all."

The father then briefed the court extensively on the jurisdictional issue, filing over 140 pages of discussion and over forty exhibits with the District Court. We rule that the father had ample notice and opportunity to be heard to satisfy his rights under both the Fourteenth Amendment to the United States Constitution, and section 40-7-105, MCA.

The father's second principal issue on appeal is whether the District Court committed reversible error in dismissing the father's petition for custody modification for lack of subject matter jurisdiction. In its carefully drafted memorandum order of February 14, 1984, the District Court analyzed the jurisdictional issue by reviewing the requirements of section 40-4-211, MCA.

Section 40-4-211 is incorporated into the Montana Uniform Child Custody Jurisdiction Act (MUCCJA) by section 40-7-104, MCA, and is the "premier jurisdictional hurdle which must be overcome before a district court may modify a child custody decree with interstate implications." In re the Marriage of Bolton (Mont. 1984), _____ P.2d _____, _____, 41 St.Rep. 1698, 1701. See also Wenz v. Schwartze (1979), 183 Mont. 166, 178, 598 P.2d 1086, 1093.

In pertinent part, section 40-4-211, MCA provides as follows:

"(1) A court of this state competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:

"(a) this state:

"(i) is the home state of the child at the time of commencement of the proceedings; or

"(ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reason and a parent or person acting as parent continues to live in this state; or

"(b) it is in the best interest of the child that a court of this state assume jurisdiction because:

"(i) the child and his parents or the child and at least one contestant have a significant connection with this state; and

"(ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

"(c) the child is physically present in this state and:

"(i) has been abandoned; or

"(ii) it is necessary in an emergency to protect him because he has been subjected to or threatened with mistreatment or abuse or is neglected or dependent; or

"(d)(i) no other state has jurisdiction under prerequisites substantially in accordance with subsections (1)(a), (1)(b), or (1)(c) or this section or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine custody of the child; and

"(ii) it is in his best interest that the court assume jurisdiction."

A district court must first determine that "one of the

four disjunctive requirements of section 40-4-211[1], MCA, be satisfied" before assuming jurisdiction to make a custody determination by modification decree. Bolton, ____ P.2d at ____, 41 St.Rep. at 1700.

In the case at bar, the District Court found that it could not take jurisdiction under section 40-4-211(1)(a) because, according to uncontradicted evidence, when the father filed his first petition for modification on February 28, 1983, the children had lived in Wyoming with their mother for over seven months. Thus, under the statute, Wyoming was the children's home state.

We agree with the District Court's findings. Section 40-4-211(1)(a), MCA provides that jurisdiction exists if Montana is the child's home state when a custody proceeding is first initiated, or had been the child's home state within six months before the custody proceedings commenced. Section 40-7-103, MCA, defines "home state" as: "[T]he state in which the child, immediately preceeding the time involved, lived with his parents, a parent, or a person acting as parent, for at least 6 consecutive months. . . "

The record indicates that both parties agree that the mother and two children moved from Montana to Wyoming sometime in late June or early July of 1983, at least seven months before the father's first petition was filed. By definition, Wyoming rather than Montana, was the home state of Brad and Christina Lance on the date that their father filed his first custody modification petition.

The father, however, urges us to toll the six month period used to determine "home state" status in this case because: (1) no notice was given the District Court by the

mother of her move to Wyoming, as required by an August 27, 1981 order of the District Court; and (2) the father was incarcerated for most of the period from May 27, 1982, through August 30, 1982, and was thus unable to locate his children's new residence.

In Pierce v. Pierce (1982), 197 Mont. 16, 640 P.2d 899, we rejected the argument that the six month "home state" period should be tolled where a non-custodial parent violated a custody decree by refusing to return a child from Montana to the decree state of Kentucky:

> "This Court is not persuaded by respondent's contention that during the time a child is present in a state as a result of acts in violation of an existing custody decree, calculation of the six month period needed to establish 'home state' jurisdiction should be tolled. Cf. Freeman v. Freeman (Ky. 1977), 547 S.W.2d 437. Neither the language nor the legislative history of the 'home state' definitional subsection support such a conclusion. See Commissioner's Note, 9 U.L.A. 123 (master ed. 1979)." Pierce, 197 Mont. at 28, f.n. 2, 640 P.2d at 904, f.n. 2.

Under Pierce, it would have been erroneous for the court in the instant case to toll the six month "home state" period, where the custodial parent removed the children from the decree state. And we will not apply the equitable remedy of tolling the six month period required to establish jurisdiction under the "home state" provision merely because the father was ~~properly convicted and~~ incarcerated ~~for a~~ See order attached. 12/6/84 ~~criminal act~~. The father has not been prevented in any way from bringing his cause of action (petition for custody modification) as a result of his incarceration. But he must establish the six month "home state" period without benefit of tolling. To rule otherwise would defeat the legislative

-9-

purpose of MUCCJA. See section 40-7-102, MCA. We find that the court correctly refused to assume jurisdiction under section 40-4-211(1)(a), MCA.

The trial court also declined jurisdiction under section 40-4-211(1)(b), MCA. Under that section, a court may not take jurisdiction unless it finds that the child and at least one contestant maintain a significant connection with Montana, and that there exists substantial evidence in Montana of the child's present or future care, protection, training and personal relationships. Although granting that the father and arguably the two children had significant connections with Montana, the District Court found that substantial evidence of Brad and Christina's present or future care, etc. did not exist in Montana.

The father argues that because the children spent most of their lives prior to June of 1982 in Montana, the substantial evidence requirement has been satisfied. This assertion ignores the plain meaning of section 40-4-211(1)(b)(ii), which explicitly focuses on "present or future care, protection, training and personal relationships." (Emphasis provided.) As of the date the District Court signed its memorandum order, Brad and Christina had lived in Wyoming for at least a year and one-half. During this time they attended school in Wyoming. Their teachers reside in Wyoming. They live with their mother and her new husband in Wyoming, where he is principal of a local high school. The trial court found no evidence on the record to indicate that this situation will not continue. We agree, and find that the court correctly refused to assume jurisdiction under section 40-4-211(1)(b),

-10-

MCA.

The court then found that it lacked jurisdiction under section 40-4-211(1)(c), MCA, based on the uncontested fact that neither of the two children were physically present in Montana, as required by the statute. In addition, the court found that the children had not been threatened with mistreatment, neglect or abuse, a further requirement of section 40-4-211(1)(c). The father apparently believes that section 40-4-211(1)(c) should apply as a basis for extending jurisdiction because the children have allegedly been subjected to mistreatment as a result of this long and onerous litigation. We simply note that section 40-4-211(1)(c) requires that the child or children must be physically present in Montana at the time in order for a Montana district court to assume jurisdiction. That was not the case here, and we affirm the trial court's conclusion regarding section 40-4-211(1)(c).

Finally, the trial court determined that it could not take jurisdiction under section 40-4-211(1)(d), the last of the alternative bases conferring jurisdiction in child custody matters. Under section 40-4-211(1)(d), MCA, a Montana district court has jurisdiction upon a finding either that no other state had jurisdiction under a similar statutory scheme, or that another state had declined to exercise jurisdiction. Wyoming adopted the UCCJA in 1973, including Wyo. Stat. section 20-5-104, an identical statute to section 40-4-211, MCA. Wyoming had jurisdiction to hear this custody modification petition because, as discussed above, Wyoming was the "home state" of Brad and Christina at the time the father's first petition was filed. Wyo. Stat.

section 20-5-104(a). And there is no indication that Wyoming "has declined to exercise jurisdiction on the ground that this state [Montana] is the more appropriate forum to determine custody of the child." Section 40-4-211(1)(d)(i), MCA. To the contrary, the father states that the Honorable John D. Troughton, Third Judicial District, Evanston, Wyoming, wrote a letter to the father on March 16, 1984, declining jurisdiction over this case. We first observe that the letter was never made a part of the record, either at the September 22, 1983 hearing, or in the father's voluminous briefs submitted to the District Court thereafter. Nor do we find in the record any indication whatsoever that any district court of the State of Wyoming has formally declined jurisdiction for any reason in this matter. Finally, we note that there were two letters sent to the father from Judge Troughton: one dated March 1, 1984, and the other March 16, 1984, both of which were included in the father's briefs to this Court. In order to provide an explanation for Judge Troughton's decision, we reprint below the text from both letters:

March 1, 1984

Dear Mr. Lance:

I am a District Judge. The State of Wyoming pays the sole compensation I am to receive for being a Judge. I am not available to be hired for any other purpose.

I am shocked and astounded beyond my abilities of expression. I cannot believe you would send a judge money for any reason. Because you have sent money to me, raising the appearance of an attempted payoff, you have left me no alternative. Your package, letter and money have been turned over to the Uinta County Sheriff and Uinta County Prosecuting Attorney for whatever action they deem appropriate.

Sincerely,

John D. Troughton
District Judge


                        March 16, 1984

Mr. Mark Harris
Attorney at Law
P.O. Box 23
Evanston, WY   82930

Mr. John Lance
Nighthawk Ranch, Box 403
Florence, MT   59833

Gentlemen:

This is to advise you that I will not sit on any case
involving controversies between John Fesler Lance and Dale
Lance Willavize, or her husband.

Sincerely,

John D. Troughton
District Judge


It is evident from reading the two letters in conjunction
that Judge Troughton removed himself from the case to avoid
any appearance of impropriety, rather than in deference to
Montana as a more appropriate state to assume jurisdiction.
The father has an available forum in Wyoming, and Wyoming is
the appropriate state to hear this custody modification
petition.   We conclude that the District Court properly
declined to assume jurisdiction under section 40-4-211, MCA.

The father also asserts that the District Court erred
in failing to expeditiously set for hearing the father's
March 3, 1983 petition for modification.   That petition was
addressed at the September 22, 1983 hearing, and was
dismissed in the court's order of February 14, 1984.   Citing
section 40-4-216(1), "custody proceedings shall receive
priority in being set for hearing," the father maintains
that the court was dilatory in scheduling his petition for

                        -13-

hearing. Yet a close examination of the record in this case indicates that if anyone has engaged in dilatory tactics, it has been the father. Between the time his first petition was filed on March 3, 1983, and the hearing date on September 22, 1983, the father inundated the District Court by filing documents such as "objections," "responses" and "notices" on an almost daily basis. Within that period he filed at least twenty motions demanding widely varying types of judicial action, many of which were wholly immaterial to the custody modification issue. Significantly, the father filed a motion to remove the judge who was in jurisdiction at the time his petition was filed. When that motion was set for hearing, the father moved to reset the hearing for a later date on three separate occasions. The mother opposed these extensions, on the grounds that they were dilatory and were causing her great expense in retaining local counsel in Missoula, Montana. Following a hearing, the Honorable Nat Allen was removed from jurisdiction on June 7, 1983.

The Honorable Michael Keedy, accepted jurisdiction on June 8, 1983. Apparently the court then set an attorney's conference for August 31, 1983, in order to sort out the plethora of pending motions before the court at that time. The father moved for a continuance of this attorney's conference, once more against the mother's opposition.

Any delay in consideration of the father's petition for custody modification has been caused by his own actions. For this reason, and those stated above, the judgment of the District Court is affirmed.

_____
Chief Justice

_____

_____

_____

_____

_____

_____
Justices

-15-

IN THE SUPREME COURT OF THE STATE OF MONTANA

No. 84-223

IN RE THE MARRIAGE OF

DALE ELLYS LANCE,

       Petitioner and Respondent,

  and

JOHN FESLER LANCE,

       Respondent and Appellant.

\* \* \* \* \* \* \* \* \* \* \*

IN RE THE CUSTODY OF BRADLEY
JOHN LANCE and CHRISTINA DALE LANCE

FILED

DEC 6 - 1984

Ethel M. _____

CLERK OF SUPREME COURT
STATE OF MONTANA

O R D E R

Petitioner filed a motion pro se to correct a previous opinion issued in this matter, October 31, 1984. Petitioner requests the deletion of all references to the fact that John Fesler Lance was ". . . properly convicted and incarcerated for a criminal act . . . "

IT IS ORDERED:

The following words contained in the above opinion be struck: "properly convicted" and "for a criminal act." That portion requested to be changed will now read: "was incarcerated . . . " between May 27, 1982 and August 30, 1982.

DATED this 6Th day of December, 1984.

_____
Chief Justice

_____

_____

_____

_____

_____
Justices