No. 84-83

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

IN RE THE MARRIAGE OF

JEFFREY LAWRENCE BOLTON,

      Petitioner and Respondent,

   and

KATHLEEN EDITH BOLTON,

      Respondent and Appellant.

---

APPEAL FROM:  The District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas Olson, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Scully, Lilly & Andriolo; Michael J. Lilly, Bozeman, Montana

    For Respondent:

        Wellcome & Frost; Albert A. Frost, Bozeman, Montana

---

Submitted on Briefs:  May 31, 1984

Decided:  August 30, 1984

Filed:  AUG 30 1984

*Ethel M. Harrison*
————————————————————
Clerk

Mr. Justice L. C. Gulbrandson delivered the Opinion of the Court.

Kathleen Bolton appeals from an order of the District Court granting a petition for modification of custody of her minor daughter. We affirm the decision of the District Court.

The marriage of Kathleen E. Bolton and Jeffrey L. Bolton was dissolved by a decree issued by the Fourth Judicial District, County of Missoula, on October 30, 1979. Custody of the parties' minor child, Jaime Brooke Bolton, was granted to the mother. The decree provided the father reasonable visitation with the child, including one month in the summer and the Christmas holidays.

Following the dissolution of the marriage, the mother and Jaime moved to Santa Barbara, California. On December 26, 1981, by agreement of the parties, Jaime was sent to live with her father in Missoula, Montana for the balance of her kindergarten school year. This arrangement arose due to an unexpected death in the mother's family in Santa Barbara. During the child's residence with the father from December 26, 1981 until July 4, 1982, Jaime attended kindergarten in Missoula. She also became acquainted with the father's neighbor, Rose Reed, and with Mrs. Reed's two young daughters. Mrs. Reed babysat for Jaime when the father's work schedule required him to be away. As agreed, Jaime was returned to her mother in Santa Barbara early in July of 1982.

On December 27, 1982, Jaime was again sent to Montana to live with her father who had transferred to Gallatin Gateway, Montana. The parties agreed that Jaime could

complete the latter half of first grade at the Gallatin Gateway Public School. According to the agreement Jaime would be returned to the mother's custody at the end of the 1982-83 school year. During the time she attended first grade in Gallatin Gateway, Jaime showed marked improvement in both her social and academic development. She also became quite attached to Mrs. Reed, as well as close friends with Mrs. Reed's daughters, all of whom by then lived with the father in Gallatin Gateway. In July of 1983 the father married Rose Reed.

In June of 1983, the mother contacted the father about Jaime's return and the father indicated he would return Jaime at the end of the first week of July, 1983.

On June 23, 1983, the father filed a petition in the Eighteenth Judicial District, Gallatin County, Montana, to modify the original custody decree. Based on the petition, the District Court granted the father temporary custody of the minor child. Custody was restored to the mother following a show cause hearing on August 5, 1983. Following a hearing on the petition to modify the prior decree on August 25, 1983, custody was returned to the father. On November 8, 1983, the District Court issued its findings of fact, conclusions of law, and an order granting the father's petition for modification of the custody decree. The order awarded permanent custody of Jaime to the father, with liberal and reasonable rights of visitation granted to the mother.

The mother raises two issues in her appeal from the District Court order:

(1) Did the District Court have subject matter

jurisdiction to hear the father's petition to modify the prior custody decree?

(2) Did the District Court err in concluding that the mother consented to the integration of the minor child into the home of the father?

The mother's jurisdictional challenge is based upon section 40-4-211, MCA, which is incorporated into the Montana Uniform Child Custody Jurisdiction Act at section 40-7-104, MCA. The mother contends that under section 40-4-211, MCA the facts of this case required the District Court to decline jurisdiction in favor of a California forum. It is the father's position that section 40-4-211, MCA is not controlling, but that jurisdiction was conferred on the court under the common law doctrine of "continuing jurisdiction" in custody cases.

In Wenz v. Schwartze (1979), 183 Mont. 166, 598 P.2d 1086, cert. denied 444 U.S. 1071, (1980), this Court defined the scope of district court jurisdiction to modify a prior custody decree with interstate implications. In interpreting the Uniform Child Custody Jurisdiction Act, section 40-7-101, MCA, et. seq., we stated, "The Act establishes a two-tiered jurisdictional test which a court must find satisfied before it makes even an initial custody decree. . . " Wenz, supra at 178, 598 P.2d at 1093.

The first tier of the Wenz test mandates that one of the four disjunctive requirements of section 40-4-211, MCA be satisfied before a district court may take jurisdiction to make a child custody determination. Wenz, supra at 178-79, 598 P.2d at 1093.

The second tier is found in section 40-7-108, MCA,

-4-

which grants the trial court discretionary authority to "decline to exercise its jurisdiction" upon a determination that it is an "inconvenient forum" and that a court of another state is a "more appropriate forum." Further jurisdictional requirements arise when a decree of another state is already in force, which is not the case here. See Wenz, supra at 180-86, 598 P.2d at 1094-97.

The father's reliance on the doctrine of "continuing jurisdiction" as being the sole jurisdictional test in interstate custody disputes is misplaced. Since the enactment of the Uniform Marriage and Divorce Act in Montana, the doctrine of continuing jurisdiction has been linked to section 40-4-219, MCA. Foss v. Leifer (1976), 170 Mont. 97, 100, 550 P.2d 1309, 1311; Erhardt v. Erhardt (1976), 171 Mont. 49, 50-51, 554 P.2d 758, 759. Section 40-4-219, MCA merely limits the authority of district courts to modify prior custody decrees, unless the factual threshold demanded by the statute is first established. According to the Commissioners' Note, that statute is "designed to maximize finality (and thus assure continuity for the child) without jeopardizing the child's interest." 9A Uniform Laws Annotated 212 (master edition 1979) (hereinafter ULA).

The function of section 40-4-211, MCA, on the other hand, is to actually confer subject matter jurisdiction upon a district court to hear custody matters with interstate implications. As the Commissioners explicitly state, section 40-4-211, MCA "governs jurisdiction to make an initial decree as well as a modification decree." 9 ULA 125 (masters edition 1979). In those custody cases where a

-5-

state other than Montana has a possible interest, the jurisdictional requirements of section 40-4-211, MCA must be met before a court may assert "continuing jurisdiction" under section 40-4-219, MCA. This position is corroborated by the Commissioners' Note to section 40-4-211, MCA:

> "The provisions of the [Uniform Marriage amd Divorce] Act concerning custody adjudication are integrated with the provisions of the Uniform Child Custody Jurisdiction Act . . . The latter Act deals with judicial jurisdiction to adjudicate a custody case when more than one state has an interest in the litigation. The Uniform Marriage and Divorce Act governs the substantive and procedural aspects of custody adjudication once the court has decided that it can and should hear the case on the merits." 9A ULA 194 (master edition 1979).

We find that section 40-4-211, MCA is the premier jurisdictional hurdle which must be overcome before a district court may modify a child custody decree with interstate implications.

In the instant case, the two-tiered jurisdictional test established in Wenz has been fully satisfied. Jurisdiction was conferred on the District Court under sections 40-4-211 and 40-7-108, MCA.

Of the several alternative bases for conferring jurisdiction, subsection 40-4-211(1)(b) is the most pertinent to this matter:

> "(1) A court of this state competent to decide child custody matters has jurisdiction to make a child custody determination by inital or modification decree if:
>
> " . . .
>
> "(b) it is in the best interest of the child that a court of this state assume jurisdiction because:

"(i) the child and his parents or the child and at least one contestant have a significant connection with this state; and

"(ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships . . . "

The parties agree that the father had a significant connection with Montana. However, appellant argues that Jaime lacked a significant connection with Montana due to the fact that she had spent all of her time from the date of her parents' divorce in October of 1979 through December of 1981 with her mother in California.

We note that section 40-4-211(1)(b), MCA does not require that the child's only significant connection be with Montana in order for a district court to assume jurisdiction. The statute requires a significant connection.

Here, the affidavit filed by the father provided the district court with ample evidence that Jaime had a significant connection with Montana. At the time the petition was filed on June 23, 1983, Jaime had spent over twelve months out of the previous eighteen with her father in Montana. From December of 1981 through July 4, 1982, Jaime resided with her father in Missoula and attended kindergarten there. From December of 1982 to the time the petition was filed, she resided with her father in Gallatin Gateway, Montana and attended first grade there. The father's affidavit indicates that Jaime had adjusted well to her school in Gallatin Gateway, and that she had made favorable progress both academically and socially. Furthermore, the father's affidavit states that Jamie had

-7-

clearly expressed her desire to remain in school at Gallatin Gateway, as well as her desire to remain with the father's new family there. Jaime's preference in this regard was conclusively established at the August 5, 1983 hearing on the modification petition.

Similarly, there was before the court "substantial evidence concerning the child's present or future care, protection, training and personal relationships." The record clearly indicated that during her visits to Montana Jaime developed strong familial bonds to the father's current family: Jaime's former babysitter and her two daughters. Evidence of a majority of Jaime's educational experience was located in Montana. Evidence of her relationships with her peers largely existed in Montana. Evidence of her care, treatment and home life in general for twelve of the eighteen months preceding the filing of the petition was available only in Montana.

The mother objects that there was no evidence of Jaime's environment in California present in Montana. While this is a fact that a trial court must carefully consider in assuming jurisdiction, the statute requires only that substantial evidence exist in the state taking jurisdiction.

The record clearly indicates that sufficient evidence of Jaime's present and future care, protection, training and personal relationships existed in Montana at the date of the petition to satisfy the "substantial evidence" requirement of section 40-4-211(1)(b), MCA.

The second jurisdictional test required by Wenz demands that a court which has satisfied the prerequisites of section 40-4-211, MCA, then determine whether

jurisdiction <u>should</u> be exercised.   Section 40-7-108 states
in part that:

> "(1) A court which has jurisdiction under
> this chapter to make an initial or
> modification decree may decline to
> exercise its jurisdiction any time before
> making a decree if it finds that it is an
> inconvenient forum to make a custody
> determination under the circumstances of
> the case and that a court of another
> state is a more appropriate forum."

Criteria for determining whether a court would constitute an

inconvenient forum is provided in subsection (3) of section

40-7-108, MCA.   However, the decision to decline

jurisdiction is entirely within the discretion of the trial

court.  <u>Wenz</u>, supra at 180, 598 P.2d at 1094.

We find no abuse of the trial court's discretion in

assuming jurisdiction to hear this case.

The second issue is whether the District Court erred

in ruling that the mother consented to the integration of

the child into the home of the father.   The controlling

statute is section 40-4-219 (1)(b), MCA:

> "(1) The court may in its discretion
> modify a prior custody decree if it
> finds, upon the basis of facts that have
> arisen since the prior decree or that
> were unknown to the court at the time of
> entry of the prior decree, that a change
> has occurred in the circumstances of the
> child or his custodian and that the
> modification is necessary to serve the
> best interest of the child and if it
> further finds that:
>
> " . . .
>
> "(b) The child has been integrated into
> the family of the petitioner with consent
> of the custodian."

The mother argues that the District Court erred in

failing to find an express intent on her part to consent to

the integration of the child into the father's family.   We

disagree.

The rationale for the consent requirement in the Uniform Act was to avoid non-custodial kidnapping. 9A ULA 212, Commissioners' Note (master edition 1979). We are persuaded by the opinion of the Appellate Court of Illinois in In Re Custody of Burnett (1979), 394 N.E.2d 58, 60, that:

> "[T]he consent requirement [in the Uniform Act] is intended to ensure that the custodian acquiesced in the transfer of physical custody (e.g. to discourage non-custodial kidnapping), and the integration into the family of the petitioner, and should be viewed in that narrow context. The consent requirement is satisfied where as in this case the custodian had placed the child with the non-custodial parent and willingly permitted the child to become integrated in the new family."

The Burnett decision properly focuses on the elimination of a motive for noncustodial kidnapping as the heart of the consent requirement.

We find that where, as here, there is a voluntary transfer of the child's physical custody from the custodial to the non-custodial parent, which results in the child's integration into the non-custodial parent's family, the consent requirement of section 40-4-219(b) is satisfied. Consent of the custodial parent to the child's integration may be implied from the voluntary transfer of physical custody.

While the mother contends that the record does not support the court's conclusion regarding the consent requirement, the standard of review employed by this Court requires only that the findings and conclusions of the trial court be supported by substantial credible evidence. In Re Marriage of Pickering (Mont. 1984), 678 P.2d 1146, 41

St.Rep. 617.

> "This Court will not substitute its judgment for that of the trier of fact. We will consider only whether substantial credible evidence supports the findings and conclusions. Findings will not be overturned unless there is a clear preponderance of evidence against them, recognizing that evidence may be weak or conflicting, yet still support the findings." Jensen v. Jensen (Mont. 1981), 629 P.2d 765, 768, 38 St.Rep. 927, 930.

The record contains substantial evidence of the mother's acquiescence to both of Jaime's transfers from her home in California to the father's home in Montana. On the first occasion, the mother sent Jaime to live with her father in Missoula so that Jaime could avoid the atmosphere of grief in the mother's home following an unexpected family death. Jaime finished kindergrarten in Missoula and became aquainted with Rose Reed (Jaime's future step-mother) and her two young daughters. After a six month stay in Montana, Jaime returned to California, as agreed by the parties. Less than six months later, the mother again sent Jaime to Montana, interrupting her first grade year in school. Again, the record reveals that the mother willingly conceded to this transfer in custody. The mother knew Jaime was attending school in Montana. She was also aware of the father's new domestic situation and Jaime's reaction to it.

The District Court found that Jaime was integrated into the father's new family as a result of the mother's having sent Jaime to Montana for the better part of the formative period involving her first two years of formal education. The court also found that under the circumstances, the appellant should have known that the child would become part of petitioner's family and home.

The findings of the District Court are supported by substantial credible evidence. The order of the District Court is affirmed.

_____
Justice

We concur:

_____

_____

_____

_____
Justices