NO. 93-087

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993


IN RE THE MARRIAGE OF

KAREN PETERSON ERLER,

     Petitioner/Respondent,

  -v-

SCOTT ERLER,

     Respondent/Appellant.

**FILED**

OCT 14 1993

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA


APPEAL FROM: District Court of the Fourth Judicial District,
In and for the County of Missoula,
The Honorable Jack L. Green, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          P. Mars Scott, Mulroney, Delaney & Scott, Missoula,
Montana

     For Respondent:

          Darla Keck, Datsopoulos, MacDonald & Lind, Missoula,
Montana


Submitted on Briefs: August 12, 1993

Decided: October 14, 1993

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from a Fourth Judicial District Court, Missoula County, opinion, determining that the court did not have jurisdiction over the custody matters at issue. We affirm.

We restate the issues on appeal:

I. Did the District Court err in concluding that under the Federal Parental Kidnapping Prevention Act (PKPA) and the Montana Uniform Child Custody Jurisdiction Act (MUCCJA), it did not have subject matter jurisdiction?

II. Did the District Court err by failing to conduct an evidentiary hearing before it concluded that it did not have subject matter jurisdiction?

III. Should this Court strike a provision in the April 26, 1985 order, stating that "visitation rights herein are subject to the Respondent being concurrent in his child support obligations?"

## BACKGROUND

The parties, Karen Peterson Erler (Karen) and Scott Erler (Scott), were married on December 22, 1979. Two children, twin sons, Thomas and Mark, were born of the marriage on October 5, 1981. The marriage was terminated in Missoula, Montana, on September 7, 1984 with Karen granted sole custody of the children and Scott ordered to pay $400 per month per child for child support.

The parties have spent numerous days in court on a variety of issues since their dissolution in 1984, notably for Scott's failure to pay monthly child support, Karen's $6,500 share of the equity in their home, and $4000 for Karen's attorney's fees. In an attempt to persuade Scott to pay child support for Thomas and Mark, the Court provided in its April 26, 1985 order that visitation would be contingent upon Scott's payment of child support to Karen. This

order also states that Scott consented to Karen's move to Seattle, Washington with the two boys, to establish a permanent residence there. A petition for modification of amended decree of dissolution states that a major reason for moving was to avoid encountering Scott.

In an order dated December 12, 1985, the paternal grandparents were granted limited visitation with Thomas and Mark, with certain restrictions. The District Court noted that "the request of the grandparents is in part an attempt to circumvent the Court's earlier Order regarding...the reintroduction of the children to their father and the payment of support."

The latest matter to come before the trial court involved Scott's motion to quash the writ of execution issued by the court on his Keogh retirement plan for failure to pay on his dissolution obligations. Also involved was Scott's motion for an order of investigation and a report concerning custody arrangements, his motion to modify custody and child support and finally, Karen's motion to dismiss Scott's petition to modify custody due to lack of subject matter jurisdiction.

In its order, the trial court concluded that:

I.
The Motion to Quash Writ of Execution is granted, and
II.
The Motion to Dismiss Petition for Modification of Custody for Lack of Jurisdiction is granted, and
III.
Having no jurisdiction to hear matters of custody, the court takes no action on Respondent's Motion for Investigation and Report Concerning Custody Arrangements for the Children.
IV.

3

Having no jurisdiction to hear matters of custody of these children, the Court takes no action on Respondent's Motion to Find Visitation Interference or Respondent's Motion to Modify Child Support which was based on the condition that he be granted custody.

The trial court stated that it did, however, retain jurisdiction over child suvvort matters.

On December 18, 1992, the trial court denied Scott's combined motion for a Rule 59(g) order to alter or amend, or in the alternative, a Rule 60(b), order for relief of a judgment or order. Scott's appeal of the court's denial brings this action before the Montana Supreme Court.

Our standard of review is whether the lower court's conclusions are correct. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603; In re Marriage of Danelson (1992), 253 Mont. 310, 317, 833 P.2d 215, 220.

## I. SUBJECT MATTER JURISDICTION

The primary issue on appeal is whether the trial court was correct in concluding that it did not have subject matter jurisdiction over child custody matters under the PKPA and/or the MUCCJA. Scott argues that under the PKPA, "Montana must continue as the jurisdictional forum to review all child care issues, including custody," and that the PKPA supersedes the MUCCJA. Karen counters that Scott is unable to meet the jurisdictional requirements of the MUCCJA and also, the PKPA does not confer subject matter jurisdiction in the instant case. We agree.

### A. PARENTAL KIDNAPPING PROTECTION ACT (PKPA)

Scott argues that the PKPA supersedes the MUCCJA and "protects

4

the rights of a custody state to exercise continuing jurisdiction over child custody issues." However, Karen asserts that the PKPA "was enacted by Congress so that there will be uniformity in determining which states will have jurisdiction over child custody proceedings when there is a conflict between two states attempting to simultaneously assert jurisdiction." (Emphasis supplied.)

Since the PKPA has not previously been interpreted by this Court, the entire statute is set forth at the end of this opinion. [1] Additionally, we will briefly discuss the history and purposes of the PKPA.

The PKPA was enacted by Congress in 1980 to address the continuing problems of forum shopping and "child snatching." 28 USC § 1738A; History: Ancillary Laws and Directives (a), page 228. Because custody decisions were not thought to be final judgments, State B would frequently fail to accord full faith and credit to a decision from State A. Foster, Child Custody Jurisdiction: UCCJA and PKPA, 27 NY L Sch L Rev 297, 297-298, (1981). This fact led to a growing number of parents seizing their child or children, moving to another jurisdiction, and bringing an action for custody in the new jurisdiction to obtain a more favorable judgment. 27 NY L Sch L Rev at 298. All too frequently, the end result was two conflicting decisions from the two different jurisdictions.

The Uniform Child Custody Jurisdiction Act (UCCJA), which had been adopted by most states to address interstate child custody disputes, was found to be inadequate to address the problems of forum shopping and "child snatching" because the UCCJA operated at

5

the state level.  Pettenati, The Effect of the Parental Kidnaping Prevention Act of 1980 on Child Snatching, **17:2** New Eng 499, 506-507, (1982).  The individual states were unable to deal with problems that were essentially interstate in nature.  **17:2** New Eng at 507.  Additionally, the lack of perceived finality in child custody issues continued to plague the state courts.  **17:2** New Eng at 506.

The PKPA established <u>national</u> standards under which jurisdictions could determine whether they had jurisdiction and what effect to give the decisions by courts of other jurisdictions. The PKPA requires full faith and credit be accorded to decisions of a jurisdiction if the court appropriately exercised jurisdiction under the PKPA standards.  28 USC **§ 1738A(a).**

The statute's general purposes are to promote cooperation and the exchange of information between state courts, facilitate the enforcement of custody decisions of sister states and to discourage continuing interstate controversies over child custody.  28 USC **§** 1738A History; Ancillary Laws and Directives, page 228.  These purposes are achieved primarily through 28 USC **§ 1738A(d)** which provides as follows:

> The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(l) of this section continues to be met and such State remains the residence of the child or of any contestant.

28 USC **§ 1738A(d)** vests continuing jurisdiction in the original state as long as the child or one of the contestants continues to reside there.  However, subsection (f) of 28 USC **§**

6

1738A permits a court of a state to **modify** a determination of custody of the same child or children made by another court if it has jurisdiction to make such a custody decision and the court of the other state no longer has jurisdiction or declines to exercise its jurisdiction.

As to the issue of whether the PKPA confers subject **matter** jurisdiction in the instant case, we conclude that it does not because Montana is the only state involved in the custody issue at this time. **"The** purpose of the PKPA is to prevent the issuance of <u>comneting</u> decrees in sister states." Nielsen v. Nielsen (La. **1985),** 472 **So.2d** 133, 136. (Emphasis supplied.) See also: Peterson v. Peterson (Me. **1983),** 464 **A.2d** 202, 204. ("Both the UCCJA and PKPA were enacted to prevent jurisdictional <u>conflict</u> and **competition** over child custody....") (Emphasis added.) In the instant case, there is no other state competing with Montana for jurisdiction. Neither Karen nor Scott have sought to invoke the jurisdictional powers of the Washington courts. Since the State of Washington is not attempting to compete with the State of Montana for jurisdiction in the matter of child custody, the PKPA is not invoked. We conclude that the trial court correctly determined that the PKPA does not apply in this case.

B. MONTANA **UNIFORM CHILD CUSTODY JURISDICTION** ACT **(MUCCJA)**

Next, we must determine whether Montana has subject matter jurisdiction over the child custody issues under the MUCCJA, which is found at Chapter 7 of Title 40. Scott argues that "Section 40-4-211, MCA, is also pertinent to this case." He contends that

7

Montana was the home state of the children when the proceedings were commenced and further, jurisdiction is established in Montana because the petition for dissolution was filed in Missoula, Montana. Karen states that Montana is unable to meet any of the jurisdictional requirements of the MUCCJA and therefore, it does not have jurisdiction in the instant case.

Section 40-7-104, MCA, states that "[t]he jurisdictional provisions of 40-4-211 apply to this chapter." Section 40-4-211, MCA, is the *'premier jurisdictional hurdle which must be overcome before a district court may modify a child custody decree with interstate implications." In re Marriage of Lance (1984), 213 Mont. 182, 188, 690 P.2d 979, 982, citing In re the Marriage of Bolton (1984), 212 Mont. 212, 218, 690 P.2d 401, 404. Section 40-4-211, MCA, provides:

> Child custody jurisdiction - commencement of proceedings.
> (1) A court of this state competent to decide child custody matters has jurisdiction to make a child custody determination by initial or modification decree if:
>     (a) this state:
>     (i) is the home of the child at the time of commencement of the proceedings: or
>     (ii) had been the child's home state within 6 months before commencement of the proceeding and the child is absent from this state because of his removal or retention by a person claiming his custody or for other reason and a parent or person acting as parent continues to live in this state: or
>     (b) it is in the best interest of the child that a court of this state assume jurisdiction because:
>     (i) the child and his parents or the child and at least one contestant have a significant connection with this state: and
>     (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships: or
>     (c) the child is physically present in this state and:
>     (i) has been abandoned; or

(ii) it is necessary in an emergency to protect him because he has been subjected to or threatened with mistreatment or abuse or is neglected or dependent: or

(d) (i) no other state has jurisdiction under prerequisites substantially in accordance with subsections (1)(a), (1)(b), or (1)(c) of this section or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine custody of the child: and

(ii) it is in his best interest that the court assume jurisdiction.

(2) Except under subsections (1)(c) and (1)(d) of this section, physical presence in this state of the child or of the child and one of the contestants is not alone sufficient to confer jurisdiction on a court of this state to make a child custody determination.

Section 40-4-211(1)(a), MCA, requires the trial court to determine which state is the child's home state or his home state within the past 6 months. "Home state" means "the state in which the child, immediately preceding the time involved, lived with his parents, [or] a parent... for at least 6 consecutive months...." Section 40-7-103, MCA. In the instant case, Scott consented to Karen's move to Washington with the boys in 1985. They have consistently resided with her in the State of Washington since that time with the exception of visitation with Scott and/or the paternal grandparents. Washington is unquestionably the home state, not Montana. Lance, 690 P.2d at 983. This determination comports with one of the general purposes of the MUCCJA, which is to:

(c) assure that litigation concerning the custody of a child takes place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available and that courts of this state decline the exercise of jurisdiction when the child and his family have a closer connection with another state....

9

Section 40-7-102(1)(c), MCA. Section 40-4-211(1)(a), MCA, does not apply to the instant case.

Under § 40-4-211(1)(b), MCA, Montana has jurisdiction if the child and his parents, or at least one contestant have a significant connection with Montana and substantial evidence is available here concerning the children's present or future care, training, and personal relationships. Mark and Tom have lived in Washington for the greater majority of their lives. Scott has significant connections with Montana but the boy's connection stems from visitation with their father. Even if the boys had significant connections with Montana, there must also be available in the state substantial evidence concerning their "present or future care, protection, training, and personal relationships.'* Section 40-4-211(1)(b)(ii), MCA. In this case, Mark and Tom's friends, classmates, teachers and physicians reside in Washington where the boys have resided for the last 7 years. Again, under § 40-7-102(1)(c), MCA, above, the requirements of subsection (1)(b) of § 40-4-211, MCA, simply cannot be met in this case.

Subsection (1)(c) of § 40-4-211, MCA, requires that the child be physically present in this state and have been abandoned or that an emergency situation necessitates the child's protection under subsection (1)(c). In this case, the children are not physically present in Montana nor are there any allegations of abandonment, mistreatment, abuse or neglect. Thus, the requirements of § 40-4-211(1)(C), MCA, cannot be met.

Under § 40-4-211(1)(d), MCA, this state may assume

jurisdiction if no other state has jurisdiction under guidelines comparable to those of subsections (1)(a), (b) and (c) or another state has declined jurisdiction because this state is a more appropriate forum <u>and</u> it is in the children's best interest that this court assume jurisdiction. Since there has been no contact with the courts in the State of Washington, it cannot be said that Washington, the boys' home state, would not have jurisdiction nor that it would decline jurisdiction. Neither can it be said that it is in the best interest of the children for child custody to be adjudicated in Montana. As stated earlier, the boys do not have a significant connection with Montana nor would substantial evidence be found in Montana regarding their present and future care and training. Finally, the boys do not live in Montana, have not lived here in years and there is no threat or emergency to necessitate Montana's claim to jurisdiction. In conclusion, Montana cannot claim jurisdiction over child custody matters in this case and the trial court correctly concluded that Montana does not have subject matter jurisdiction in this case.

## II. EVIDENTIARY HEARING

Scott argues that under Pierce v. Pierce (1982), 197 Mont. 16, 640 P.2d 899, "when dealing with the children's best interests, an evidentiary hearing is the only means of determining those best interests as they relate to jurisdiction." However, Karen counters that this issue is being raised for the first time on appeal and therefore, should not be addressed. Scott does not discuss this assertion in his reply brief; his silence and a review of the

11

record reveal that this is, indeed, the first time this issue has been raised. It is a settled rule in Montana that we will not review an issue raised for the first time on appeal. In re Marriage of Starks (1993), 50 St. Rep. 719, 722, ___ Mont. ___, 855 P.2d 527, 532. Therefore, we decline to address this issue.

### III. MOTION TO STRIKE

Scott's final issue on appeal concerns his request to strike a provision in the April 26, 1985 order, stating that "visitation rights herein are subject to the Respondent being concurrent in his child support obligations." However, Karen argues that Scott should have appealed this issue within 30 days of the 1985 judgment. Alternatively, if the issue is before the Court, she contends that although the trial court erroneously used the word "concurrent" instead of current, the trial court's intention was to require child support payment before the exercise of visitation. Given Scott's continuing, flagrant abuse of his support obligations we will address this issue.

At the outset, we note that visitation and child support are not interdependent. State ex rel. Dewyea v. Knapp (1984), 208 Mont. 19, 22-23, 674 P.2d 1104, 1105-1106; State ex rel. Blakeslee v. Horton (1986), 222 Mont. 351, 355, 722 P.2d 1148, 1150. However, in this case, a review of the record reveals a clear intention by the trial court to ensure that child support would be current before visitation could be exercised based on Karen's continuing child support problems and the parties' stipulation on the record to that provision.

12

Karen had previously reported to the trial court that she was not being paid child support. In her Petition for Modification of Amended Decree of Dissolution, and affidavit, both signed on January 31, 1985, she contended that Scott was in arrears in the amount of $2,800.00. In her February 5, 1985 Motion for Temporary Order, she again stated "[t]hat Respondent is in arrears for months July, 1984, until January, 1985 in the amount of $2,800.00." These documents indicate that Karen was concerned about the child support arrearages, and that she made the court aware of Scott's non-compliance.

A simple reading of Finding of Fact 10 from the trial court's order of April 26, 1985, makes it evident that the trial court intended to require that the child support be current before Scott exercised visitation. It states "[t]hat the visitation rights herein are subject to the Respondent being concurrent [sic] in his child support." (Emphasis added.) The visitation rights are "subject to" the condition that the child support obligations be met. That condition is an indisputable mandate, that child support payments were to be current. The trial court made this requirement a condition of Scott's exercise of visitation.

The following portion of the February 21, 1985 transcript further clarifies this issue and provides as follows:

> (By Mr. MacDonald): The visitation rights as set forth herein are by stipulation subject to the Respondent being concurrent in the child support obligations at the time of the commencement of his child support obligations. I realize, your Honor, that this is an unusual stipulation, as some of these proceedings are, but I would remind the court we have been through this. This is now our third appearance in Court. No child support has been paid to

13

date, and this agreement is being made by stipulation of the parties in view of those circumstances.

THE COURT: I did't quite understand what you said about visitation current in child support. You used --

MR. MacDONALD: Excuse me.

THE COURT: I would like you to repeat it.

MR. MacDONALD: All visitation rights of the Respondent are conditioned upon his being current in the payment of child support at the date he is exercising his visitation. That is, if he is not current, through the Clerk of Court, then the visitation will not take place.

. . .

MR. MacDONALD: Could the Court have both the parties stipulate on the record that they find the agreement acceptable?

THE COURT: Dr. Erler?

MR. ERLER: Acceptable.

THE COURT: And you?

MRS. ERLER: Yes.

It is apparent that Scott is using a minor mistake in an otherwise clear order to avoid his child support obligations. His position is untenable. A review of the record and a careful reading of the trial court's order make it clear that child support is not dependent upon the exercise of visitation, but that visitation is conditioned upon child support payments being current at the time of visitation. His argument, wholly unsupported by the record, leads us to deny his request to strike that portion of the trial court's order. In so doing, we stress, however, that the facts and stipulation of the parties in this case are unique. This case shall not hereafter be cited for the proposition that

14

visitation is dependent upon child support being current: the two are not interdependent.

AFFIRMED.

1.    The PKPA provides as follows:

Full faith and credit given to child custody determinations
(a)   The appropriate authorities of every State shall enforce according to its terms, and shall not modify except as provided in subsection (f) of this section, any child custody determination made consistently with the provisions of this section by a court of another State.

(b)   As used in this section, the term--
(1)   "child" means a person under the age of eighteen:
(2) "contestant" means a person, including a parent, who claims a right to custody or visitation of a child:
(3)   "custody determination" means a judgment, decree, or other order of a court providing for the custody or visitation of a child, and includes permanent and temporary orders, and initial orders and modifications:
(4)   "home State" means the State in which, immediately preceding the time involved, the child lived with his parents, a parent, or a person acting as parent, for at least six consecutive months, and in the case of a child less than six months old, the State in which the child lived from birth with any of such persons.  Periods of temporary absence of any of such persons are counted as part of the six-month or other period:
(5) "modification" and "modify" refer to a custody determination which modifies, replaces, supersedes, or otherwise is made subsequent to, a prior custody determination concerning the same child, whether made by the same court or not;
(6) "person acting as a parent" means a person, other than a parent, who has physical custody of a child and who has either been awarded custody by a court or claims a right to custody:
(7) "physical custody" means actual possession and control of a child: and
(8) "State" means a State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, or a territory or possession of the United States.

(c) A child custody determination made by a court of a State is consistent with the provisions of this section

only if--
(1) such court has jurisdiction under the law of such State; and
(2) one of the following conditions is met:
(A) such State (i) is the home State of the child on the date of the commencement of the proceeding, or (ii) had been the child's home State within six months before the date of the commencement of the proceeding and the child is absent from such State because of his removal or retention by a contestant or for other reasons, and a contestant continues to live in such State;
(B) (i) it appears that no other State would have jurisdiction under subparagraph (A), and (ii) it is in the best interest of the child that a court of such State assume jurisdiction because (I) the child and his parents, or the child and at least one contestant, have a significant connection with such State other than mere physical presence in such State, and (II) there is available in such State substantial evidence concerning the child's present or future care, protection, training, and personal relationships;
(C) the child is physically present in such State and (i) the child has been abandoned, or (ii) it is necessary in an emergency to protect the child because he has been subjected to or threatened with mistreatment or abuse;
(U) (i) it appears that no other State would have jurisdiction under subparagraph (A), (B), (C), or (E), or another State has declined to exercise jurisdiction on the ground that the State whose jurisdiction is in issue is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that such court assume jurisdiction; or
(E) the court has continuing jurisdiction pursuant to subsection (d) of this section.
(d) The jurisdiction of a court of a State which has made a child custody determination consistently with the provisions of this section continues as long as the requirement of subsection (c)(1) of this section continues to be met and such State remains the residence of the child or of any contestant.

(e) Before a child custody determination is made, reasonable notice and opportunity to be heard shall be given to the contestants, any parent whose parental

16

rights have not been previously terminated and any person who has physical custody of a child.

(f) A court of a State may modify a determination of the custody of the same child made by a court of another State, if--

(1) it has jurisdiction to make such a child custody determination: and
(2) the court of the other State no longer has jurisdiction, or it has declined to exercise such jurisdiction to modify such determination.

(g) A court of a State shall not exercise jurisdiction in any proceeding for a custody determination commenced during the pendency of a proceeding in a court of another State where such court of that other State is exercising jurisdiction consistently with the provisions of this section to make a custody determination.

28 USA § 1738A.

_____
Justice

We Concur:

_____

_____

_____

_____
Justices

17