No. 97-680

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 190

IN RE PATERNITY AND CUSTODY OF B.E.S.,

A Minor Child.

JAMES LEWIS,

Petitioner and Respondent,

v.

MELISSA SOWERS, n/k/a MELISSA GREENE,

Respondent and Appellant.

APPEAL FROM: District Court of the Eighth Judicial District,

In and for the County of Cascade,

The Honorable Marge Johnson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Marcia Birkenbuel, Attorney at Law; Great Falls, Montana

For Respondent:

Daniel L. Falcon, Attorney at Law; Great Falls, Montana

No

Submitted on Briefs: June 11, 1998

Decided: July 29, 1998

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶ **In August 1995, James Lewis filed a petition in the Eighth Judicial District Court, Cascade County, to establish paternity, custody, and visitation rights as the father of then three-year-old B.E.S. In June 1997, Lewis filed a motion for contempt and for specified visitation on the grounds that the child's mother, Melissa Sowers (now known as Melissa Greene and hereinafter referred to as Sowers) had denied him reasonable visitation. Sowers later filed a motion asking that the District Court decline to exercise continuing jurisdiction over the matter. The court denied Sowers' motion to decline jurisdiction, and subsequently entered an oral order granting Lewis much of the relief he sought by way of his motion for contempt and specified visitation. Sowers appeals from the District Court's order denying her motion to decline jurisdiction and from the court's oral order granting Lewis's motion for specified visitation and request for attorney fees.**

¶ **The sole dispositive issue presented by Sowers on appeal is whether the District Court abused its discretion in denying her motion to decline jurisdiction.**

## FACTUAL AND PROCEDURAL BACKGROUND

¶ B.E.S. was born in Great Falls, Montana, on March 29, 1992, to Melissa Sowers and James Lewis. The relationship between Sowers and Lewis had begun to deteriorate prior to B.E.S.'s birth, and the two never married. The record indicates that Lewis's paternity was initially established by blood tests performed in 1994.

¶ B.E.S. has lived with her mother for her entire life. B.E.S. lived in Great Falls with her mother from the time of her birth until the summer of 1997, when she and her mother moved to Fargo, North Dakota, to live with Sowers' new husband. On August 15, 1995, while B.E.S. and her mother were still living in Great Falls, Lewis filed a petition in Cascade County District Court to establish paternity, custody, and visitation rights as B.E.S.'s father. Lewis is a Wisconsin resident, as he was at the time he filed the petition in August 1995.

¶ On March 6, 1996, Lewis filed a motion for temporary visitation on the grounds that he and Sowers had been unable to negotiate an acceptable visitation schedule. On March 15, 1996, Sowers filed a motion for an order requiring Lewis to pay temporary child support, to maintain health insurance for B.E.S. and to pay all of the child's uncovered medical expenses. The court held a hearing on March 18, 1996, to address the parties' respective motions. Prior to the hearing, the parties reached an agreement with respect to temporary visitation, temporary child and medical support, and a variety of other issues. The parties entered their stipulations upon the record during the hearing.

¶ More than one year later, on June 24, 1997, Lewis filed a "motion for contempt, for specified visitation, and other relief." Lewis asserted he had been denied visitation with his daughter on a regular basis, and asked the court to order "a set visitation schedule." Lewis additionally asked that the court hold Sowers "in contempt for her failure to abide by past orders, and to live up to her obligations under the joint custody statutes regarding maintaining contact between" B.E.S. and Lewis. Among Lewis's remaining requests were that the court issue an order temporarily prohibiting Sowers from removing B.E.S. from the court's jurisdiction, and that it order Sowers to pay the attorney fees and costs he incurred in connection with filing the motion.

¶ On July 10, 1997, the District Court issued a temporary order mandating that B.E.S. "remain in Great Falls, Montana, with her maternal grandmother, until a hearing

can be held in this matter." The court set a hearing to address the remainder of Lewis's motion for October 31, 1997.

¶ On September 19, 1997, Sowers filed a motion for an order declining jurisdiction. Sowers asked that the court decline "to exercise continuing jurisdiction in this matter for the reasons that this state is an inconvenient forum, pursuant to Section 40-7-108, MCA, and the child's home state of North Dakota is a more appropriate forum for this case." Sowers noted that Lewis was a resident of Wisconsin, and argued that because she and B.E.S. were residents of North Dakota, "[a]ny evidence regarding the child's present or future care, protection, training, and personal relationships is more readily available in North Dakota than in Montana." Sowers argued that "[t]he state of North Dakota obviously has a closer connection with the child and her family than Montana has," and asserted that the continued exercise of jurisdiction by Montana's courts would contravene the purpose of the Uniform Child Custody Jurisdiction Act.

¶ On October 29, 1997, the District Court issued an order denying Sowers' motion for an order declining jurisdiction, finding that, at the time Lewis filed his motion for contempt, for specified visitation, and other relief, "Montana was clearly the home state of the child and it is at that point that the determination is made." The court additionally noted that, as of the October 29, 1997, date of its order, B.E.S. had "yet to live for a six month period of time in North Dakota."

¶ On October 31, 1997, the court held a hearing on Lewis's motion for contempt, visitation, and other relief. At the close of the hearing, the court entered an oral order granting Lewis certain visitation rights, and mandating that Sowers pay a portion of Lewis's attorney fees and costs.

¶ On November 26, 1997, Sowers filed her notice of appeal from the District Court's October 29, 1997, order denying her motion to decline jurisdiction, and from its October 31, 1997, oral order regarding visitation and attorney fees.

## DISCUSSION

¶ Did the District Court abuse its discretion in denying Sowers' motion to decline jurisdiction?

¶ As noted, Sowers appeals from the District Court's order denying her motion to decline jurisdiction, as well as from its subsequent order granting Lewis certain visitation rights and mandating that she pay a portion of his attorney fees and costs. Although Sowers appeals from both orders, the sole issue she raises on appeal is whether the court erred in denying her motion to decline jurisdiction. We review the District Court's decision denying Sowers' motion to decline jurisdiction for an abuse of discretion. *See, e.g.*, *In re Marriage of Irwin* (1993), 259 Mont. 176, 179, 855 P.2d 525, 527.

¶ On appeal, Sowers argues the District Court failed to complete the two-tiered jurisdictional analysis required by the Uniform Child Custody Jurisdiction Act (UCCJA), and that it was thus an abuse of discretion for the court to deny her motion to decline jurisdiction. Although Sowers does not specifically dispute the District Court's conclusion that Montana was B.E.S.'s "home state" at the time of Lewis's motion for contempt and visitation, she does assert the court erred in ending its jurisdictional inquiry at that point. Sowers argues that once the court had evaluated the jurisdictional prerequisites of § 40-4-211, MCA, it was bound to then determine whether Montana's courts were an inconvenient forum to make a custody determination under the circumstances present at the time of her September 19, 1997, motion to decline jurisdiction. More specifically, Sowers argues the court abused its discretion in failing to address those factors identified in § 40-7-108(3), MCA, as relevant to an inconvenient forum determination. For example, although Sowers concedes the court considered whether another state was B.E.S.'s home state, she argues the court failed to consider whether another state had a closer connection with the child and whether substantial evidence regarding B.E.S.'s welfare was more readily available in another state. Sowers also argues the court failed to consider whether the continued exercise of jurisdiction by Montana's courts would contravene the purposes of the UCCJA as set forth in § 40-7-102, MCA. Based on the foregoing, Sowers asks that we vacate the District Court's decision, and remand this matter "with instructions to stay the District Court proceedings pending assumption of jurisdiction over these matters by the North Dakota court."

¶ Lewis, in contrast, argues the District Court correctly concluded it had jurisdiction over the present case pursuant to § 40-4-211, MCA, and asserts the court did not abuse its discretion in deciding to maintain jurisdiction over the matter. More specifically, Lewis argues the District Court correctly concluded that Montana was B.E.S.'s "home state," and argues the court thus had jurisdiction pursuant to § 40-4-

**211, MCA.**

¶ Lewis next recognizes that § 40-7-108, MCA, authorizes a Montana court to decline jurisdiction "at any time before making a decree if it finds that it is an inconvenient forum to make a custody determination under the circumstances of the case and that a court of another state is a more appropriate forum," but argues the court was not obligated to undertake such an analysis. Even if it was necessary for the court to address the inconvenient forum question, however, Lewis argues there was no more appropriate forum in this case than that presented by Montana's courts. For example, Lewis asserts that "all relevant evidence pertaining to B.E.S.'s care, training, [and] personal relationships" was located in Montana at the time he filed his motion for contempt and visitation. Moreover, unlike Sowers, Lewis asserts that the District Court's decision to maintain jurisdiction in this case actually complies with the stated purposes of the UCCJA. Based on the foregoing, Lewis argues the District Court did not abuse its discretion in denying Sowers' motion to decline jurisdiction.

¶ We have previously stated that the UCCJA "establishes a two-tiered jurisdictional test which a court must find satisfied before it makes even an initial custody decree." *In re Marriage of Bolton* (1984), 212 Mont. 212, 216, 690 P.2d. 401, 403 (quoting *Wenz v. Schwartze* (1979), 183 Mont. 166, 178, 598 P.2d 1086, 1093, *cert. denied* (1980), 444 U.S. 1071, 100 S. Ct. 1015, 62 L. Ed. 2d 753). The first tier "mandates that one of the four disjunctive requirements of Section 40-4-211, MCA, be satisfied before a district court may take jurisdiction to make a child custody determination." *Bolton*, 212 Mont. at 216, 690 P.2d at 403. Section 40-4-211(1), MCA, provides in pertinent part that "[a] court of this state competent to decide parenting matters has jurisdiction to make a parenting determination by initial or amended decree if: (a) this state: (i) is the home state of the child at the time of the commencement of the proceedings."

¶ In the present case, the District Court specifically concluded that because B.E.S. had "yet to live for a six month period of time in North Dakota" at the time of Lewis's motion for contempt and specified visitation, or the time of its order, "Montana was clearly the home state of the child." Because Sowers does not specifically dispute this conclusion on appeal, we need not determine whether the court erred in concluding that Montana qualified as B.E.S.'s "home state" as that term is defined by § 40-7-103(5), MCA. It is thus apparent that the first tier of the UCCJA's jurisdictional test was met in the present case.

¶ **The second tier of the UCCJA's jurisdictional test "demands that a court which has satisfied the prerequisites of Section 40-4-211, MCA, then determine whether jurisdiction *should* be exercised."** *Bolton*, **212 Mont. at 220, 690 P.2d at 405. Under this second tier, the district court has "discretionary authority to 'decline to exercise its jurisdiction' upon a determination that it is an 'inconvenient forum' and that a court of another state is a 'more appropriate forum.'"** *Bolton*, **212 Mont. at 216-17, 690 P.2d at 403 (citing § 40-7-108, MCA). We have explicitly recognized that "[t]he decision to decline jurisdiction on inconvenient forum grounds is purely discretionary with the District Court."** *In re Marriage of Cook* **(1986), 223 Mont. 293, 297, 725 P.2d 562, 564-65. We have stated that the court, in determining whether it is an inconvenient forum, "shall consider if it is in the child's best interest for another state to assume jurisdiction, taking into account such factors as whether another state is the child's home state, whether substantial evidence concerning the child's welfare is more readily available in another state, and whether the exercise of jurisdiction by a Montana court would contravene the UCCJA's stated purposes."** *Irwin*, **259 Mont. at 179, 855 P.2d at 527 (citing § 40-7-108(3), MCA). Section 40-7-108 (3), MCA, specifically provides that:**

> In determining if it is an inconvenient forum, the court shall consider if it is in the interest of the child that another state assume jurisdiction. For this purpose it may take into account the following factors, among others:
>
> (a) if another state is or recently was the child's home state;
>
> (b) if another state has a closer connection with the child and his family or with the child and one or more of the contestants;
>
> (c) if substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state;
>
> (d) if the parties have agreed on another forum which is no less appropriate; and
>
> (e) if the exercise of jurisdiction by a court of this state would contravene any of the purposes stated in 40-7-102.

¶ Although the District Court considered the "home state" factor, it is clear from the text of its order denying Sowers' motion to decline jurisdiction that it did not specifically evaluate any of the remaining statutory factors before deciding to maintain jurisdiction over the present case. Despite the fact that the court did not expressly discuss the remaining criteria identified by § 40-7-108(3), MCA, we nevertheless conclude the court did not abuse its discretion in denying Sowers' motion to decline jurisdiction. Nowhere does § 40-7-108(3), MCA, mandate that the court consider each of the five factors set forth within. Instead, the statute simply lists a number of elements which the court <u>may</u> consider in making an inconvenient forum determination. In the present case, the court clearly considered the first factor set forth in § 40-7-108(3), MCA, and concluded that Montana was B.E.S.'s home state. The record indicates that B.E.S. spent the first five years of her life in Great Falls, Montana, and moved to North Dakota in early July 1997, just days after Lewis filed his motion for contempt and for specified relief. Sowers filed her motion asking that the court decline to exercise continuing jurisdiction over the case just two and one-half months after B.E.S. had moved to North Dakota. At the time of Sowers' motion to decline jurisdiction, B.E.S. had lived in Montana for all but two and one-half months of her life. Under these circumstances, there is no indication that B.E.S. and her family had any closer connection to North Dakota then they did to Montana, and no indication that evidence regarding B.E.S.'s welfare was any more readily available in North Dakota than it was in her home state of Montana. Finally, we note there is no indication that the exercise of continuing jurisdiction by the Montana court in this case contravenes any of the nine general purposes of the UCCJA, among which is the deterrence of "unilateral removals of children undertaken to obtain custody awards." Section 40-7-102(1)(e), MCA.

¶ Based on the foregoing, we hold the District Court did not abuse its discretion in denying Sowers' motion to decline jurisdiction, and accordingly affirm the court's October 31, 1997, oral order regarding visitation and attorney fees.

/S/ JIM REGNIER

No

We Concur:


/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ WILLIAM E. HUNT, SR.

/S/ TERRY N. TRIEWEILER