No. 05-584

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 324

IN RE THE MARRIAGE OF
JENNIFER FONTENOT,

       Petitioner and Respondent,

  and

JACOB RYAN FONTENOT,

       Respondent and Appellant.

APPEAL FROM:    The District Court of the Eighth Judicial District,
                     In and For the County of Cascade, Cause No. ADR 2002-556,
                     Honorable Thomas M. McKittrick, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Barbara E. Bell, Marra, Sexe, Evenson & Bell, P.C.,
              Great Falls, Montana

       For Respondent:

              Gary M. Zadick, Mary K. Jaraczeski, Ugrin, Alexander, Zadick
              & Higgins, Great Falls, Montana

                                Submitted on Briefs: July 19, 2006

                                Decided: December 8, 2006

Filed:

                _____
                             Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1    Jacob Fontenot (Jacob) appeals from an order of the Eighth Judicial District Court, Cascade County, concluding the District Court has jurisdiction over the custody dispute with his ex-wife Jennifer Fontenot (Jennifer), and that Jacob should be held in contempt of court for failure to fulfill the requirements of the order of the District Court. We reverse and remand.

¶2    Jacob raises three issues on appeal:

¶3    1.    Did the District Court err in ruling that it has jurisdiction over the custody dispute between Jacob and Jennifer?

¶4    2.    Did the District Court err in ruling that Jacob is in contempt of court?

¶5    3.    Did the District Court err by making a custody determination without the statutory findings required by § 40-4-212, MCA?

¶6    Because we find Issue 1 dispositive, we do not address Issues 2 and 3.

## FACTUAL AND PROCEDURAL BACKGROUND

¶7    Jacob and Jennifer married on June 30, 2001, while Jacob, a Louisiana resident, was stationed with the United States Air Force in Great Falls, Montana. The couple had one child together, Wyatt, born on January 31, 2001. On November 6, 2002, Jennifer filed a petition for dissolution in the District Court, which included a proposed parenting plan for Wyatt. At that time, Jacob was serving with the Air Force in Shreveport, Louisiana. Wyatt continued to live with Jennifer in Great Falls.

¶8    On December 21, 2002, the Department of Public Health and Human Services (DPHHS) removed Wyatt involuntarily from Jennifer's care for suspected child abuse and turned Wyatt over to Jacob. DPHHS determined Jacob had an equal right to custody of Wyatt and left subsequent custody issues to the courts. At the time of DPHHS's action, Wyatt was nearly two years old and had lived exclusively with Jennifer.

¶9    Jacob returned to Louisiana with Wyatt and filed his own dissolution action in Louisiana on December 30, 2002. Wyatt has lived in Louisiana ever since. Shortly thereafter, the Louisiana Thirteenth Judicial District Court (Louisiana court) held a hearing concerning the custody of Wyatt. Jennifer did not participate in this hearing and on the next day, the Louisiana court decided it had jurisdiction over the child custody proceedings based upon an emergency situation pursuant to the Uniform Child Custody Jurisdiction Act (UCCJA). *See* La. Rev. Stat. 13:1702(A)(3). Jennifer never appealed the Louisiana court's decision.

¶10    On February 11, 2003, the District Court held a telephone conference with the Louisiana court and subsequently issued an order transferring jurisdiction to the Louisiana court reasoning that it was in the "best interest" of Wyatt for the Louisiana court to have jurisdiction. Jennifer appealed the District Court's transfer of jurisdiction to the Louisiana court to this Court.

¶11    On September 11, 2003, we issued our Opinion, *In re Marriage of Fontenot* (*Fontenot I*), 2003 MT 242, 317 Mont. 298, 77 P.3d 206, which held that the District Court erred in not holding a hearing to determine proper jurisdiction before transferring jurisdiction to the Louisiana court. *Fontenot I*, ¶ 21. Further, we determined that the

3

District Court erred by utilizing the "interest of the child"[1] standard in determining that the transfer of jurisdiction to the Louisiana court was proper. *Fontenot I*, ¶ 16. We reversed and remanded the case to the District Court to hold a proper hearing on the jurisdictional issue. *Fontenot I*, ¶ 22.

¶12   On October 1, 2003, the Louisiana court entered a default judgment against Jennifer granting sole custody of Wyatt to Jacob.

¶13   The District Court held a hearing to determine whether it had jurisdiction over the child custody issues on April 2, 2004. Based on testimony and argument of counsel along with its interpretation of the holding in *Fontenot I*, the District Court determined that it had jurisdiction under the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). The District Court's decision will be discussed more thoroughly below.

¶14   On June 16, 2004, the Louisiana court issued a ruling for permanent custody and child support, finding that Jennifer abandoned Wyatt and that it had permanent jurisdiction over the custody proceedings. The Louisiana court reached this decision based on the facts that Jennifer never appealed the emergency jurisdiction ruling in February of 2003 and that Wyatt had lived in Louisiana for eighteen months.

¶15   Jennifer later filed a motion in the District Court to hold Jacob in contempt of court for continuing to pursue legal proceedings in Louisiana after the District Court determined it had jurisdiction over the case. Jennifer objected to the Louisiana court's

---

[1] Although this Court in *Fontenot I* used the phrase "interest of the child" in describing the District Court's error, the proper usage from the text of the UCCJA is "best interest[s] of the child." *See* La. Rev. Stat. 13:1702(A)(2).

4

jurisdiction for the first time on June 23, 2004, by filing a motion with the Louisiana court.

¶16    Jacob sent notice to the District Court stating he did not intend to participate in the Montana proceedings and instead planned to continue to pursue the Louisiana proceedings. In response, the District Court issued an order on July 7, 2004, which granted custody of Wyatt to Jennifer and issued a civil warrant for Jacob's arrest after finding him in contempt of court.

¶17    The Louisiana court then held a hearing on November 16, 2004, regarding the permanent custody of Wyatt. Jennifer personally appeared at this hearing with counsel. The Louisiana court entered judgment in favor of Jacob, giving him full custody of Wyatt. This judgment was never appealed by Jennifer.

¶18    Subsequently, Jennifer filed a motion with the District Court for Jacob to show cause why he had not fulfilled the requirements of the July 7, 2004 District Court order which granted custody of Wyatt to Jennifer. A hearing was then held wherein Jacob filed a motion to dismiss the contempt charge based on lack of jurisdiction of the District Court. The District Court issued another order on July 28, 2005, again finding that Montana had jurisdiction over the custody dispute and giving Jacob 30 days to relinquish physical custody of Wyatt to Jennifer. When Jacob failed to produce Wyatt to Jennifer, another warrant for arrest for civil contempt was issued against Jacob by the District Court.

¶19    Jacob appeals.

## STANDARD OF REVIEW

¶20 We review a district court's findings of fact to determine if the findings are clearly erroneous. *Vannatta v. Boulds*, 2003 MT 343, ¶ 7, 318 Mont. 472, ¶ 7, 81 P.3d 480, ¶ 7. We review a district court's conclusions of law to determine whether the court's interpretation of the law is correct. *Vannatta*, ¶ 7.

## DISCUSSION

¶21 *Did the District Court err in ruling that it has jurisdiction over the custody dispute between Jacob and Jennifer?*

¶22 Jacob contends that our holding in *Fontenot I* was merely that the District Court did not conduct the proper fact finding through a hearing to determine whether or not Montana properly has jurisdiction. Conversely, Jennifer argues that this Court, in *Fontenot I*, determined Montana has jurisdiction over the dispute. We agree with Jacob. We did state in *Fontenot I* that "[b]ecause the Louisiana court is not operating under the UCCJEA, we conclude the Louisiana court could not divest the District Court of jurisdiction under § 40-7-102(2), MCA." *Fontenot I*, ¶ 20. We conclude today that ¶ 20 of *Fontenot I* is dictum and not part of the actual holdings of *Fontenot I*. There are two distinct holdings in *Fontenot I*. First, the District Court "erred when it relied on an 'interest of the child' standard in its determination regarding jurisdiction." *Fontenot I*, ¶ 16. Second, the District Court "erred by making a determination regarding its jurisdiction without holding a hearing and without making any determinations of fact and law." *Fontenot I*, ¶ 21.

6

¶23 Subsequently, the District Court, in its order dated April 12, 2004, relied on the *Fontenot I* dictum in finding that "because the Louisiana court was not operating under the UCCJEA, it could not divest this Court of jurisdiction under § 40-7-107(2), MCA." The District Court made this conclusion of law based not on the actual holdings of *Fontenot I*, but rather on the *Fontenot I* dictum. Dictum is not binding precedent. *State v. Montoya*, 1999 MT 180, ¶ 24, 295 Mont. 288, ¶ 24, 983 P.2d 937, ¶ 24. Contrary to the District Court's order and Jennifer's argument, the holding of *Fontenot I* was not that the District Court had jurisdiction over the custody dispute, but rather that the proper hearing to determine jurisdiction did not take place.

¶24 Montana operates under the UCCJEA while Louisiana operates under the UCCJA. For purposes of this appeal, the important difference is that the UCCJA incorporates a "best interest of the child" standard in a district court's determination of proper jurisdiction, while this standard was eliminated from the UCCJEA which Montana adopted in 1999. *Fontenot I*, ¶¶ 14-15. The UCCJA was adopted in all fifty states, the District of Columbia and the Virgin Islands. *Stoneman v. Drollinger*, 2003 MT 25, ¶ 12, 314 Mont. 139, ¶ 12, 64 P.3d 997, ¶ 12. The UCCJA was enacted to solve problems associated with jurisdictional custodial disputes. *Paslov v. Cox*, 2004 MT 325, ¶ 25, 324 Mont. 94, ¶ 25, 104 P.3d 1025, ¶ 25. The Montana Legislature enacted the UCCJEA in 1999, which repealed and replaced the UCCJA provisions in Montana law. *Paslov*, ¶ 25; *Stoneman*, ¶ 14. While both acts are considered "uniform," in actuality they are not uniform with each other. Thus, the standard as to which act to apply in jurisdictional conflicts is unclear.

7

¶25 As we said in *Paslov*, ¶ 26, "[h]owever helpful the uniform enactments have been, they nonetheless operate in large part at the state level, while the parental conduct they are designed to prevent is essentially interstate in nature." The federal government's response to this jurisdictional conflict came in 1980, in the form of the Parental Kidnapping Prevention Act (PKPA), 28 U.S.C. § 1738A, which sets forth jurisdictional guidelines in the face of competing custody decisions by sister states. *Paslov*, ¶ 23. The PKPA established national standards under which jurisdictions could determine whether they had jurisdiction and what effect to give the decisions by courts of other jurisdictions. The PKPA requires full faith and credit be accorded to decisions of a jurisdiction if the court appropriately exercised jurisdiction under the PKPA standards. 28 U.S.C. § 1738A(a).

¶26 "The purpose of the PKPA is to prevent the issuance of competing decrees in sister states." *Erler v. Erler*, 261 Mont. 65, 70, 862 P.2d 12, 16 (1993) (citing *Nielsen v. Nielsen*, 472 So.2d 133, 136 (La. App. 1985)). In *Paslov*, competing jurisdictional decrees from a Montana district court and the High Court of American Samoa were issued by both courts in a custody dispute. *Paslov*, ¶¶ 16-19. Because the law governing custodial disputes in Montana is the UCCJEA while American Samoa had not adopted the UCCJEA, we applied the PKPA to determine which court properly possessed jurisdiction of the case. *Paslov*, ¶ 37. Here, we are left with competing decrees of jurisdiction between Montana, which utilizes the UCCJEA, and Louisiana, which utilizes the UCCJA. Because the PKPA was intended to remedy these types of conflicts, the

8

District Court may apply the standards set forth in the PKPA in determining which state properly has jurisdiction here.

¶27   We hold that the District Court improperly relied on the dictum from *Fontenot I* and thus erred in concluding, as a matter of law, that it had jurisdiction over this custody dispute.  As a result of not properly determining whether it had jurisdiction, the District Court did not lawfully have authority to issue an order of contempt against Jacob or to issue a custody determination, hence we do not address Issues 2 and 3.

## CONCLUSION

¶28   The judgment and order of the District Court is reversed and remanded for a new hearing on the jurisdictional issue ignoring the *Fontenot I* dictum.  We also reverse the issuance of the contempt of court order against Jacob, the arrest warrant, and the District Court's custody order, without prejudice to the result of further proceedings consistent with this opinion.

/S/ JAMES C. NELSON

We Concur:

/S/ KARLA M. GRAY
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS


Justice Jim Rice dissenting.

¶29   I believe the Court has erred in concluding that this case should be reversed and remanded for application of "the standards set forth in the PKPA in determining which state properly has jurisdiction," because that question is not yet before the Court.

9

¶30 The Court correctly notes that the PKPA sets forth jurisdictional guidelines in the face of competing custody decisions by sister states. However, the issue before this Court, as before the District Court, is not, at least yet, which of two competing state custody decrees should be enforced, but whether an *initial* custody decree could validly issue in Montana, and whether it could be enforced by a contempt order. Determining whether a state has properly acted under the PKPA requires application of the two-prong test of 28 U.S.C. § 1738A(f)(1) and (f)(2), the first prong of which requires a determination that a state has jurisdiction under its own laws to exercise custody. *See* 28 U.S.C. § 1738A(c)(1). That is the issue we are now trying to resolve under Montana law. As Appellant himself argues, "[t]he Montana contempt order against Father should be vacated as the Montana court had no jurisdiction in which to issue it."

¶31 I disagree with Appellant's arguments and would affirm the District Court's order as a valid exercise of custody jurisdiction based upon proper factfinding, for which we remanded in *Fontenot I*. The parties may then choose to litigate the proper application of the PKPA to two competing custody decrees for a determination of which custody order must prevail.

/S/ JIM RICE

10