# FILED

April 27 2010

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA



DA 09-0597

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2010 MT 86

IN RE THE MARRIAGE OF

JENNIFER FONTENOT,

      Petitioner and Appellant,

  and

JACOB RYAN FONTENOT,

      Respondent and Appellee.

APPEAL FROM:   District Court of the Eighth Judicial District,
In and For the County of Cascade, Cause No. ADR 02-556
Honorable Thomas M. McKittrick, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Gary M. Zadick; Ugrin, Alexander, Zadick & Higgins,
        Great Falls, Montana

    For Appellee:

        Barbara E. Bell; Marra, Sexe, Evenson & Bell, P.C.,
        Great Falls, Montana

Submitted on Briefs: March 17, 2010

Decided: April 27, 2010

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Jennifer Fontenot appeals from the District Court's October 14, 2009 Order on Respondent's Motion to Dismiss and Petitioner's Motion in Support of Jurisdiction. We affirm.

¶2    Jennifer contends on appeal that the District Court erred in deciding that the custody issues in this case should be determined by the courts of Louisiana, and not Montana.

## BACKGROUND

¶3    This is the third time this case has been before this Court on appeal on the issue of whether Montana or Louisiana courts should determine the custody of the parties' child, a son who is now nine years old. *In re the Marriage of Fontenot*, 2003 MT 342, 317 Mont. 298, 77 P.3d 206 (Fontenot I); *In re the Marriage of Fontenot*, 2006 MT 324, 335 Mont. 79, 149 P.3d 28 (Fontenot II).

¶4    Jennifer and Jacob's son was born in 2001; they were married and lived together for a time. Jacob is a member of the United States Air Force who was stationed in Great Falls and Jennifer described her occupation as entertainer. The Air Force transferred Jacob to his home state of Louisiana and Jennifer filed for divorce in Montana. In December, 2002, she left the son with a babysitter with arrangements for him to stay overnight. The sitter noticed a significant bruise on the boy's buttock and called the Great Falls Police. The Police notified the Department of Family Services and a social worker responded. She found a severe bruise on the boy and could see the imprints of

2

several fingers in it. She took the boy to the emergency room where the attending physician determined that the bruising was not accidental and that he did not suffer from any disorder that made him susceptible to easy bruising.

¶5 The social worker took emergency custody of the boy and placed him in a secure situation, as authorized by § 41-3-301(1), MCA. She contacted Jennifer and her boyfriend at the time, and interviewed them about the bruise. Both denied knowing anything about it although both admitted that they disciplined the child by spanking him. While Jennifer was out of the room, the boyfriend admitted to the social worker that if the boy had been abused, it was his fault. Both Jennifer and the boyfriend were evasive or non-responsive to questions about drug use, and the boyfriend, a member of the Air Force, would not respond to questions about whether he was the subject of disciplinary proceedings.

¶6 Great Falls Police contacted the social worker to report that Jacob had been calling seeking information about his son, and they asked the social worker to call Jacob. She did, explaining the situation to him. He stated that he was coming to Montana to care for his son and arrived shortly thereafter with his mother and grandmother. After consulting with the other professionals in her office and with the County Attorney's office, the social worker determined that there were no custody orders concerning the boy and that either parent was entitled to physical custody as provided in § 40-6-221, MCA. The social worker therefore turned the boy over to Jacob, who returned with him to Louisiana. The boy has lived with Jacob or Jacob's mother in Louisiana since late December, 2002. Jennifer has maintained little contact with her son since that time.

3

¶7    Both Jennifer, in Montana, and Jacob, in Louisiana, commenced judicial proceedings seeking custody of their son. In Montana, the District Court in Cascade County, after conferring by telephone with the judge in Louisiana, decided that Louisiana courts should determine the child custody issues. In *Fontenot I*, this Court reversed and remanded to the District Court for a hearing on whether Montana should exercise jurisdiction. On remand the District Court determined that Montana courts should exercise jurisdiction over the child custody issues. In *Fontenot II*, this Court again reversed, determining that the District Court had failed to apply the proper legal standard and remanded for a determination of whether Montana courts should exercise jurisdiction. In 2004, while these proceedings occurred in Montana, the court in Louisiana held a custody hearing at which Jennifer appeared with counsel. The Louisiana court awarded custody to Jacob and Jennifer did not appeal.

¶8    In October, 2009, the District Court in Montana entered its order concluding that Louisiana courts should exercise jurisdiction. Jennifer appeals from that order.

## STANDARD OF REVIEW

¶9    This Court reviews a decision to decline jurisdiction to determine whether the district court abused its discretion. *Fontenot I*, ¶ 11. We review conclusions of law to determine whether they are correct. *Paslov v. Cox*, 2004 MT 325, ¶ 22, 324 Mont. 94, 104 P.3d 1025.

## DISCUSSION

4

¶10    In *Fontenot II* we held that since Montana[1] and Louisiana had different statutes governing jurisdiction of child custody disputes, resolution of the issue required application of the Parental Kidnapping Prevention Act, 28 USC § 1738A. The PKPA was designed to prevent the issuance of competing custody decrees by sister states, as happened in this case. *Fontenot II*, ¶ 26.

¶11    On remand after *Fontenot II*, the District Court conducted a hearing and received briefs and arguments from the parties. The District Court then issued the order appealed from, in which it found that the child had resided in Louisiana for six years and that the courts in that state had conducted a number of hearings on the merits of the custody dispute and were familiar with the facts and issues. The District Court found that the child's home, school and community are in Louisiana and that he has received continuous and stable care there.

¶12    The District Court applied the PKPA and determined that Montana could exercise jurisdiction because jurisdiction existed under Montana law and because Montana was the home state of the child within six months of the date the proceedings for custody were commenced. 28 USC § 1738A. The District Court further determined that under § 40-7-108, MCA, a Montana court may "decline to exercise its jurisdiction *at any time* if it determines it is an inconvenient forum under the circumstances, and a court of another state is a more appropriate forum." (Emphasis in original.)

---

[1] Montana has adopted the Uniform Child Custody Jurisdiction and Enforcement Act, §§ 40-7-101 through -317, MCA.

¶13 Considering the facts presented, the District Court determined that Louisiana was the more convenient forum to determine the custody issue. The District Court noted that over five years had passed since it last considered the inconvenient forum issues in § 40-7-108, MCA. The District Court again noted the length of time the child has lived in Louisiana and the fact that the evidence required to resolve custody issues is primarily in that state. While the child was initially taken into custody in Montana as a victim of suspected abuse, the District Court concluded that there was no evidence that the facts surrounding those events "are more relevant to a custody determination than the people and circumstances associated with the child's life in Louisiana for the last five and one-half years."

¶14 The District Court noted again that the Louisiana court had held hearings on the merits of the custody issue and is familiar with the issues, whereas in Montana only jurisdictional issues had been addressed. The District Court concluded that under the circumstances the Louisiana court is in a better position to resolve the issues expeditiously. The District Court found no evidence of domestic violence between Jennifer and Jacob and no evidence that the relative financial positions of the parties would prevent them from adequately litigating in either state. The District Court further found that the

> overwhelming fact of this case is that Jennifer—in spite of her efforts to retain custody of the minor child—has had very little, if any, contact with the minor child since December of 2002, when the child was taken to Louisiana; whereas the child has presumably developed significant relationships with Jacob and others in his community in Louisiana.
> The minor child's home, school and community are in Louisiana. Evidence regarding the continuity and stability of care of the child is in

6

Louisiana. Evidence regarding the minor child's developmental needs is in Louisiana. It is simply not in the best interests of the child to litigate the proceedings in Montana and it is in the best interest of the child that Louisiana assumes and/or retains jurisdiction.

The District Court concluded that it should decline to exercise jurisdiction because Louisiana is a more appropriate forum to determine custody issues. Even if Montana were a more appropriate forum in 2004, Louisiana is the more appropriate forum now.

¶15    The District Court is affirmed.


                                        /S/ MIKE McGRATH


We concur:

/S/ JAMES C. NELSON
/S/ PATRICIA O. COTTER
/S/ MICHAEL E WHEAT
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JIM RICE